BANGERT v. HUBBARD.

[No. 18,600. Filed May 27, 1955. Rehearing denied July · 14, 1955. Transfer denied June 19, 1957. Rehearing on Petition to Transfer denied June 28, 1957.]

*Charles V. Livengood,* of Richmond, *Bowen, Mendenhall & Hunter,* of Winchester, and *Hollowell & Hanill, Robert Hollowell* (of counsel), of Indianapolis, for appellant.

*Dennis & Dennis,* of Richmond, and *Meeks Cockerill,* of Winchester, for appellee.

KENDALL, J.—Appellee brought suit in the lower court in two paragraphs against appellant. First paragraph sought damages for alleged assault and battery; the second sought damages for malicious prosecution.

The first paragraph alleged that the appellant "unlawfully" touched, beat, struck and wounded the appellee by "unlawfully" and purposely shooting him with a 32 caliber revolver.

The second paragraph alleged that the appellant, acting maliciously and without probable cause, caused appellee to be arrested on a charge of blackmail which was later dismissed by the Prosecuting Attorney, the appellee claiming that he was guiltless of the charge.

Cause was put at issue by the filing of appropriate answers by appellant.

The issues were submitted to a jury resulting in a verdict for appellee in the sum of Four Thousand, Five Hundred ($4,500.00) Dollars on the first paragraph of complaint and Ten Thousand, Five Hundred ($10,500.00) Dollars on the second paragraph of complaint upon which judgment was rendered by the trial court for $15,000.00.

The motion for new trial filed contained numerous specifications. The specific specifications necessary for a determination in this appeal are as follows:

(a) That the damages assessed by the jury are excessive and there was error in the assessment of damages in that said assessment was to large;
(b) Verdict of the jury is contrary to law and not sustained by sufficient evidence;
(c) Error of law occurring at the trial in that: that the court erred in refusing to give to the jury defendant's requested instructions numbers one, two three and four, which tendered refused instructions dealt with the element of self-defense.

The other specifications in appellant's motion for new trial deal with alleged errors of the court in rulings upon introduction of evidence. In view of the conclusion reached, we deem it unnecessary to discuss those alleged errors.

The Assignment of Errors are:

The trial court erred in overruling appellant's motion to strike out parts of appellee's complaint;
The trial court erred in overruling appellant's motion to require appellee to make his complaint more specific;
The trial court erred in sustaining appellee's motion to require appellant to answer questions propounded on conditional examination of appellant;
The trial court erred in overruling appellant's motion for new trial.

The evidence reveals that the appellee and his then wife (now divorced) lived on appellant's farm in Union

County; that the appellee was employed in a factory at Richmond and likewise did farming for appellant; that appellant's wife advised appellee that her husband was associating with his wife; that thereafter, appellee discussed this subject with appellant who denied it; that appellant called at appellee's home on appellant's farm when the appellee happened to be there resulting in an exchange of words and particularly as to whether or not appellant had lied to appellee in denying his association with appellee's wife. There was evidence that at the time of this call that the appellee told appellant he had to be paid Ten Thousand ($10,000.00) Dollars by 4:00 p.m. or that he (appellee) would kill the appellant. This was denied by appellee who testified in substance that he said that he would sue the appellant for Ten Thousand ($10,000.00) Dollars for associating with his wife. Evidence revealed that subsequently appellee consulted counsel and was advised that he could no longer bring suit for alienation of affections. Thereafter appellee, while driving his automobile on a street in Richmond, saw appellant entering a storeroom whereupon he immediately stopped, parked his car, got out and called for the appellant. Words were exchanged, whereupon appellee struck appellant on the face, knocking him down and for a distance of eight feet; a scuffle followed during which time appellee noticed a gun in appellant's hand, which gun was fired, the bullet going through appellant's leg and into appellee's abdomen. Thereafter appellant was arrested an subsequently entered a plea of guilty to assault and battery and paid a fine. The appellant had appellee arrested on a charge of blackmail growing out of the conversation in appellee's home where there was testimony in reference to a demand of Ten Thousand ($10,000.00) Dollars. The charge of blackmail was later dismissed which was the basis for the suit on the second paragraph for malicious prose-

cution. The appellee testified that he was looking for the appellant and that he struck the first blow. Appellant contends that the evidence even more favorable to the appellee shows that appellant acted in self-defense, and, therefore, was entitled to have the jury instructed on that issue, for which he tendered four instructions which were refused by the trial court. Appellee does not argue that the instructions did not correctly state the law as relating to the element ■ of self-defense but contends that the instructions were properly refused since appellant failed to plead specially self-defense. No such answer was filed by appellant. With appellant's contention on this particular point, the court agrees. The rule in this state and other jurisdictions is that if a defendant in a civil action desires to rely upon self-defense for damages growing out of assault or assault and battery, he must raise that issue by special answer and further that self-defense is not and cannot be in issue under an answer of general denial. *Myers* v. *Moore* (1891), 3 Ind. App. 226, 28 N. E. 724; *Norris* v. *Casel* (1883), 90 Ind. 143; 4 Am. Jur., Assault and Battery, §143, p. 194.

In regard to this issue, in the case of *Pendleton* v. *Railway Co.* (1918), 82 W. Va. 270, 95 S. W. 941, 16 A. L. R. 766, in deciding whether or not self-defense had to be specially pleaded, the court said:

"It is contended that there was no plea filed which would allow evidence to be introduced tending to show that the conductor acted in self-defense, or justifying the instructions which the court gave upon this theory of the case. It does not appear from the record that any such plea of justification is filed, and it seems to be very well established that in a civil action for assault and battery, in order for the defendant to justify upon the ground of self-defense, the same *must* (our emphasis) be specially pleaded."

Appellant contends that since appellee used the word "unlawfully" in the complaint describing the assault and battery that the general denial put self-defense in issue. In view of the decisions of this state and other jurisdictions on the same question, such attempted distinction is not sound and is without merit.

Specifications three and four of new trial motion contend that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. In addition to the evidence already summarized, there was additional evidence that the appellant, following his meeting with appellee on October 23, 1950, was, a week later, appointed a deputy sheriff so that he might carry a gun. He admitted that he did not give the sheriff the correct reason for his desire to carry a gun with which gun he was armed on the morning of the fight of November 25, 1950. There is sufficient evidence of probative value showing that immediately after appellee hit appellant and knocked him down that appellant drew his gun and that it went off, striking appellee while appellant lay on the ground; that appellee made an effort to hold appellant's wrist and to prevent a second shot. The appellee testified that while the fight was going on, appellant threatened twice to kill him. A detective testified that appellant stated that he (appellant) aimed at the appellee and fired the gun. There was evidence that the man on his back (Bangert) had the gun in his hand and that when Bangert asked for help in getting appellee off of him, he was told to get rid of the gun and he would get help. There was not any evidence that the appellee ever had hold of the gun. There was additional evidence that appellant was questioned after the altercation as to what it was all about and that appellant replied in substance that it had been going on for a long time and that he got him first. A

disinterested witness testified that Hubbard was on top and "was trying to prevent him from holding the gun."

The evidence submitted to the jury on this issue was sufficient if believed by them to justify their verdict on the first paragraph of complaint and the verdict is sustained by sufficient evidence and not contrary to law.

Appellant's second specification of motion for new trial is that the damages were excessive (Assignment of Error No. 4).

For a proper determination of this specification, it is necessary to review the evidence as compared to the allegation of appellee's complaint for which they sought damages in the sum of Twenty Five Thousand ($25,000.00) Dollars. Rhetorical paragraph seven of the second paragraph of complaint is as follows:

"7. That plaintiff by reason of the foregoing suffered and still suffers great mental anguish and plaintiff also suffered physical arrest and detention and discomfort and the plaintiff's reputation has been besmirched and blackened and has been grievously damaged by the wrongful action of the defendant as aforesaid and by the said offense so maliciously and wrongfully charged against him without probable cause, all to the plaintiff's damage in the sum of Twenty-five Thousand Dollars ($25,000.00)."

We have searched the record and the only evidence of damages proved were for One Hundred ($100.00) Dollars which appellee paid for counsel fee growing out of the arrest on the blackmail charge. There were articles in the paper about appellee's arrest, as well as articles appearing in the paper when the case was dismissed by the Prosecuting Attorney but we find no evidence or attempt to prove damages to the appellee resulting from the publication thereof. To the contrary, numerous witnesses testified for the appellee in that

his reputation was good up to the day of the trial. The appellee offered no testimony as to the damage in any form growing out of the arrest. There was no evidence of loss of earnings or that his standing with his employer was affected in any particular. Neither was there evidence that his social standing was affected; that he suffered loss of reputation or humiliation, embarrassment or suffering either mental or physical as the result of the charge of blackmail having been filed.

In deciding this issue, we recognize generally that the formula which is perhaps most frequently used to determine whether a verdict is excessive is to the effect that, to warrant interference, the verdict must be so excessive as to appear to have been given under the influence of passion and prejudice. We recognize that the question as to whether a verdict is excessive is generally one for the determination of the trial court in the first instance, and its action in granting or refusing a new trial on that ground will not be generally disturbed on appeal unless an abuse of discretion is shown. However, when a verdict is so grossly disproportionate to any reasonable compensation warranted by the facts that it shocks the sense of justice and raises at once a strong presumption that it is based on prejudice or passion rather than on sober judgment, a court of appeals should not hesitate to set it aside notwithstanding that the trial court had refused to do so. A verdict for damages based on evidence which does not show with reasonable certainty that the complaining party was injured or the extent of his injury cannot be sustained on an appeal. *Steel* v. *Development Co.* (1917), 80 W. Va. 206, 92 S. E. 410, L. R. A. 1917E 975. Reviewing courts generally have the same power to set aside verdicts, when excessive, in cases involving punitive damages as it has when only compensatory damages are recovered and likewise is

this general rule applicable where the verdict appears to have been due to passion or prejudice.

Courts do not interfere except in extreme cases and where it appears that injustice has been done, although a jury has a wider discretion in the matter of allowing punitive damages than they have in the matter of compensatory damages. *Scott* v. *Times-Mirror Co.* (1919), 181 Cal. 345. Notwithstanding, their discretion is not an arbitrary or unlimited one. The jury is not at liberty to award by way of punitive damages any amount regardless of how large it may be and their verdict in this respect is subject to review by courts of appeal to the same extent as an award of compensatory damages. The character of damages sustained and proven should in some degree be considered by the jury in measuring the amount to be assessed as punitive damages.

We are of the opinion that a verdict which awards to a plaintiff one hundred and four times as much damages by way of punishment as he was entitled to for compensatory damages as shown by the evidence is indicative that the jury were influenced in some improper way in reaching the same, and, while it is true that ordinarily the jury will be held to be the judge of what amount should be added as punitive damages in order to secure adequate punishment in this class of cases, even though we hold no brief for this appellant, for the evidence shows that his actions were anything but gentlemanly, notwithstanding, we cannot allow a verdict to stand where the amount for punitive damages is so disproportionate to the amount of actual damages proven. It is so out of harmony with the theory upon awarding of punitive damages, that it convinces us that the jury were misguided to say the least in returning a verdict of that size in comparison to the evidence introduced.

We have examined appellee's authorities in which they seek to substantiate the amount of the verdict but we fail to find any case where the verdict for █ punitive damages was in such a large proportion to the compensatory damages as proven. Considering all the facts presented here, we believe it to be sound reasoning that the amount of punitive damages awarded by a jury must bear some reasonable proportion to the amount of compensatory damages. Under the evidence presented in the trial of this case, the lack of evidence as to damages suffered by appellee, the verdict at first blush appears to be excessive.

In the case of *Pendleton* v. *Railway Co., supra,* the court said:

> "We are of the opinion that a verdict which awards to a plaintiff nine or ten times as much damages by way of punishment as he is entitled to by way of compensation, in a case in which substantial compensatory damages are awarded, is indicative that the jury were influenced in some improper way in reaching the same, and while it is true that ordinarily the jury will be held to be the judge of what amount should be added as punitive damages in order to secure adequate punishment in this class of cases, we cannot allow a verdict to stand where the amount thereof is so disproportionate to the amount of actual damages, is so out of harmony with the theory upon which punishments are inflicted for like offenses that it convinces us that the jury were misguided, to say the least, in returning the same."

Other jurisdictions have likewise generally held that the amount of exemplary damages must bear some reasonable proportion to the actual damages █ sustained and upon a showing of unreasonable proportion of the punitive damages to compensatory damages that an excessive judgment will be set

aside. *L. & N. R. R. Co.* v. *Ritchel* (1912), 148 Ky. 701; *Mitchell* v. *Randal, Appellant* (1927), 288 Pa. 518.

The case of *Thompson* v. *Town of Fort Branch* (1932), 204 Ind. 152, 178 N. E. 440, involved an appeal wherein the appellant brought suit to recover damages for the loss of his son's services who was killed as a result of the alleged negligence of the appellee. The jury returned a verdict assessing appellant's damages at One ($1.00) Dollar. In appellant's motion for new trial, he assigned as error the fact that the assessment of damages was too small. Judge Treanor, speaking for the Supreme Court in reversing that case, said:

> "Error in assessment is established if, as in the present case, it clearly appears from uncontra- dicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. We conclude that there was mani- fest error in the assessment of the amount of re- covery." See also *American Motor Car Co.* v. *Robbins* (1913), 181 Ind. 417, 103 N. E. 641.

Even though the Thompson case, *supra,* is for the loss of services yet the same general principle is in- volved. The court recognized the general principle that the amount of the verdict of the jury must bear some reasonable relation to the loss suffered by the complain- ing party, and, on that basis, the Supreme Court re- versed the decision of the trial court.

For these reasons, the judgment is affirmed as to the first paragraph of the complaint in the sum of Four Thousand, Five Hundred ($4,500.00) Dollars; the judgment in the sum of Ten Thousand, Five Hundred ($10,500.00) Dollars in the second paragraph of com- plaint is reversed with instructions to sustain appel- lant's motion for new trial on the second paragraph of complaint and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 126 N. E. 2d 778.

Transfer denied, 143 N. E. 2d 285.

Landis, J., dissents, with opinion.

Bobbitt, J., concurs, in dissent with opinion.