DWYER *v.* MCCLEAN.

[No. 19,178. Filed May 19, 1961. Rehearing denied June 22, 1961. Transfer denied June 13, 1961, Landis, J., concurring with opinion reported in 183 N. E. 2d 204.]

456

*Dale & Dale*, and *Francis C. Dale, Jr.*, of Indianapolis, for appellant.

*John T. Davis, Seth S. Ward*, both of Indianapolis, and *Scifres & Hollingsworth*, of Lebanon, for appellee.

RYAN, J.—This action was brought by the appellee against the appellant for damages for alleged malicious prosecution which arose out of the arrest of the appellee on a warrant issued by virtue of a criminal affidavit which was signed by the appellant and approved by the prosecuting attorney of Marion County, Indiana. No good purpose would be served by quoting or examining any portion of the testimony. It is enough to say that the evidence was in conflict. Trial was had by jury, which resulted in a verdict for the appellee, consistent judgment was rendered thereon, and from the overruling of this motion for a new trial the appellant appeals.

The appellant contends that the verdict of the jury in awarding damages in the amount of Thirteen Thousand Seven Hundred ($13,700.00) Dollars was excessive, and cites in support thereof *Bangert* v. *Hubbard* (1957), 127 Ind. App. 579, 126 N. E. 2d 778, in which case this court stated in 127 Ind. App. at page 589:

> "We have examined appellee's authorities in which they seek to substantiate the amount of the verdict but we fail to find any case where the verdict for punitive damages was in such a large proportion to the compensatory damages as proven. Considering all the facts presented here, we believe it to be sound reasoning that the amount of punitive damages awarded by a jury must bear some reasonable proportion to the amount of compensatory damages."

In an action for malicious prosecution the plaintiff may recover all damages which are the natural probable consequences of the malicious prosecution complained of. The plaintiff, if entitled to damages, may thus recover as compensatory damages the pecuniary loss which results directly from

such prosecution. He may also recover as exemplary and punitive damages for the non-pecuniary losses if any have been sustained. Within this second class of damages are included the injuries to the plaintiff's reputation, since an accusation of a crime made under the pretense of bringing a person guilty of such crime before the bar of justice is made in an imposing and impressive manner and the reputation of the party so accused may have inflicted upon it a deeper and longer lasting injury than would be inflicted thereon if the same charges were uttered under other circumstances. Consideration can also be given in awarding such damages to the humiliation, embarrassment, mental suffering, physical pain, discomfort and inconvenience caused by such prosecution if the same are shown to be the direct and proximate results of the defendant's action. Further, if such prosecution arises from the instigation of criminal proceedings, the jury may also take into consideration the arrest and imprisonment suffered by the plaintiff. 34 Am. Jur., Malicious Prosecution, §§95, 98.

For a verdict to be set aside on the ground of excessiveness, in this type of case the rule of Indiana is as follows:

"Courts seldom disturb verdicts on the ground that compensation for an injury to character has been estimated by too high a standard. In cases of this character a new trial will not be granted on the ground of excessive damages, unless they are so outrageous as to induce the belief that the jury acted from prejudice, partiality or corruption. *Guard* v. *Risk*, 11 Ind. 156; *Alexander* v. *Thomas*, 25 Ind. 268; *Crocker* v. *Hadley*, 102 Ind. 416.

"An action for malicious prosecution, like actions for libel or slander, involves the question of compensation for an injury to character. We can not disturb the verdict on that ground."

*The Evansville and Terre Haute Railroad Company et al.* v. *Talbot* (1891), 131 Ind. 221, 223, 29 N. E. 1134.

However, the appellant argues that at the most the appellee showed pecuniary damages in the total amount of Three Hundred Seventy-five ($375.00) Dollars, and that therefore, following the above quoted provision in *Bangert* v. *Hubbard, supra*, the award of the jury is so disproportionate to the actual or compensatory damages allowed that such must be reversed. And well such might have been true in the *Bangert* case, *supra*, since:

> "There was no evidence of loss of earnings or that his standing with his employer was affected in any particular. Neither was there evidence that his social standing was affected; that he suffered loss of reputation or humiliation, embarrassment or suffering either mental or physical as the result of the charge of blackmail having been filed." *Bangert* v. *Hubbard, supra*, 587.

We do not have the same situation presented in the cause before us, as there was evidence to the effect that the appellee suffered loss of earnings, that his standing with his employer was affected, as was his social standing, and that he further suffered humiliation and a loss of reputation. Appellee testified that:

> "This prosecution affected my employment at State Auto Association in that I did not get the first promotion I was in line for; people were a little cold where they had been friends."
>
> . . . . .
>
> "Another man with less seniority was promoted ahead of me. First time that had been done."
>
> . . . . .
>
> "Reports of the prosecution appeared in the Indianapolis newspapers. These papers are in

state-wide circulation including the northern part of the state which is part of my territory. The agents of the companies read about it, mentioned the fact to me, and I was embarrassed."

.  .  .  .  .

"It affected my friendships with people I knew and used to see socially. I didn't see them and if I did, they were cold."

The elements which the jury or the trial court may consider in assessing the amount of punitive damages do not admit of any strict and specific proof, and we can foresee situations in criminal prosecutions where if the punitive damages were to be tied to such a proportionate rule grave injustices would be done. The measure of a man's character and reputation can hardly be measured by the amount of money he may have been required to expend in defending himself against such criminal action. In all actions for malicious prosecution an adjustment is required between two highly important social interests. The first of these is an interest in the efficient and just enforcement of criminal law, which requires aid to be given to private persons who help in such enforcement against any prejudice which arises from a determination of such prosecution in favor of the accused. Balanced against this is the right possessed by each individual to be protected against unjustifiable and oppressive criminal charges. An invasion of the latter may result in damage or injury to the character and reputation of the individual.

To paraphrase Shakespeare's "Othello", "He that filches from me my good name robs me of that which not enriches him and makes me poor indeed." We cannot therefore say that as a matter of the law that the verdict of the jury was excessive.

The essential elements of a malicious prosecution action are:

". . . the prosecution of some legal proceedings by, or at the instigation of, defendant, the absence of probable cause to do so, malice in instituting the proceedings, the termination of such proceedings in plaintiff's favor, and damages sustained by plaintiff." 19 I. L. E. Malicious Prosecution, ch. 1, §1.

While appellant admits that he signed the affidavits against the appellee, appellant urges that no warrants were issued on said affidavits and therefore no action was instituted by the appellant. However, it is not necessary that the warrant does in fact issue, since:

". . . Here the wrong done is in maliciously causing a false charge to be filed in a court of justice, the tendency of which is to bring into disrepute the party against whom it is filed. It is not important whether there is or is not a technical commencement of the prosecution; the wrong is in setting it on foot. If a defendant should maliciously and wrongfully file an affidavit before a justice of the peace charging a plaintiff with having committed a felony, it would certainly be no answer to a complaint seeking a recovery for such a tort to aver that although a warrant was issued it never came to the hands of the officer. The charge in such a case is publicly made; for the proceedings of the court are open and public, and the injury is complete whether the warrant ever reaches the officer or not. The fact that it did reach the officer, and that an arrest was made under it, would be important as tending to aggravate the injury, but it is not a fact essential to the existence of a cause of action." *Coffey* v. *Myers* (1882), 84 Ind. 105, 106.

Appellant further argues that the evidence fails to establish want of probable cause and malice.

The question whether or not probable cause existed under a given statement of facts is a question of law for the court, not a question of fact for the jury. Where the evidence presents conflicting theories on the question of probable cause, one theory being consistent with the existence of probable cause and the other consistent with its absence, it is:

". . . the duty of the court, on the one hand, to group the facts within the evidence which it concludes, as a matter of law, show probable cause, and then hypothetically state such group of facts to the jury, directing it that if it finds such group of facts proven by the evidence that it *must* find that there was probable cause, and, on the other hand, to group the other facts within the evidence which it concludes, as a matter of law, show the absence of probable cause, and then hypothetically state those facts to the jury, directing it that if it finds such group of facts proven by the evidence that it *must* find that there was not probable cause; and in no event must the court delegate to the jury the duty of determining for itself, as a matter of law, whether either group of facts, or any other group that it may find to be proven by the evidence, shows probable cause." *Cleveland, etc., R. Co.* v. *Dixon* (1912), 51 Ind. App. 658, 663, 96 N. E. 815.

"Probable cause occurs, in an apparent state of facts, found to exist upon reasonable inquiry, such as the given case renders convenient and proper, which would induce a reasonably intelligent and prudent person to believe the accused had committed the crime charged. *Hutchinson* v. *Wenzel* (1900), 155 Ind. 49, 54, 56 N. E. 845; *Terre Haute, etc., R. Co.* v. *Mason* (1897), 148 Ind. 578, 46 N. E. 322.

"In the abstract, probable cause is a pure question of law, but its existence in a given case is a mixed question of law and fact, when one or more of the elementary facts thereof, relied upon, is controverted; in such case, the court must hypothetically state to the jury the material facts

which the evidence tends to prove, and postively direct, as to the law, on the assumed state of facts. Where the facts are uncontroverted, the court must determine the existence or nonexistence of probable cause. *Hutchinson* v. *Wenzel, supra,* 54, and cases cited." *Indianapolis Traction, etc., Co.* v. *Henby* (1912), 178 Ind. 239, 248, 97 N. E. 313.

The facts in the instant case are controverted. Further, the charges against the appellee were finally dismissed for want of prosecution. And unless explained, the termination of the proceedings in favor of the accused, because of the failure of the private prosecutor to press the prosecution to a conclusion, is evidence to indicate that the accuser did not believe the accused guilty of the crime with which he caused him to be charged. Restatement, Torts §665 (1) (1938). There is thus no merit to this contention of appellant.

Nor is the fact that appellant apparently sought the advice of counsel before the institution of the prosecution conclusive evidence that he acted without malice or that probable cause existed. *Atkinson* v. *Van Cleave* (1900), 25 Ind. App. 508, 57 N. E. 731. Interrogatories were submitted to the jury, and the jury in its answers found against appellant on this issue. Under the state of the evidence the question was within the province of the jury, and we must thus regard the question as being correctly decided.

Appellant further asserts that he now has newly discovered evidence, such evidence consisting of a polygraph test taken by the appellant on June 13, 1957.

Burns' 1946 Replacement §2-2401 provides that a new trial may be granted for newly discovered evi-

dence, material for the party applying, which he could not with reasonable diligence, have discovered and produced at the trial. It should be noted that the polygraph test was taken on June 13, 1957, while this trial was held in May, 1957. While we do not determine whether such alleged evidence would or would not be admissible, the same would not come within the rule for newly discovered evidence. The appellant could with reasonable diligence have obtained such alleged evidence prior to the time of the trial.

The appellant further assigns as error the refusal of the court to give his Instruction No. 4, which reads as follows:

"The court instructs you that in this action for malicious prosecution the burden is on the plaintiff to prove the following four facts:

"1. That defendant instituted the prosecution or caused it to be instituted.

"2. That defendant acted maliciously in instituting or causing to be instituted said prosecution.

"3. That no probable cause existed for said defendant to institute or cause to be instituted said prosecution.

"4. That the prosecution has terminated in a dismissal or acquittal in the plaintiff's favor.

"The court further instructs you that if plaintiff proves each of the aforesaid four facts, then your verdict shall be for the plaintiff, but that if plaintiff fails to prove any one of the aforesaid four facts, then your verdict should be for the defendant."

The court did, however, read to the jury its Instruction No. 7, which reads as follows:

"The burden is upon the plaintiff, T. Sherman McClean, before he can recover in this cause to prove by a fair preponderance of the evidence:

"First: That he was prosecuted as stated in the complaint and that such prosecution terminated in his favor by acquittal or dismissal before this action was brought;

"Second: That the defendant, Vernon J. Dwyer, instituted or caused to be instituted the proceedings maliciously and without probable cause;

"Third: That the plaintiff, T. Sherman McClean, has been injured or damaged thereby.

"If these facts are proved, then the defendant, Vernon J. Dwyer, becomes liable for such damages sustained by the plaintiff, T. Sherman McClean, by reason of such prosecution.

"It is for the jury to determine under all the evidence pertaining to such issues as to whether or not said prosecution was instituted by the defendant with malice against the plaintiff. The jury may infer malice not only from personal hatred, ill will, malevolence, or corrupt design on the part of the defendant toward the plaintiff relating to the prosecution in question, if shown by the evidence but it may also infer this element from reckless disregard, if any, on the part of the defendant in relation to such prosecution, of the rights of plaintiff to liberty and freedom from arrest, if such be the case, which reckless disregard would be inconsistent with good faith or the mere purpose to further the ends of justice, on the part of the defendant. Malice may also be inferred from the facts which, if established, would constitute want of probable cause."

The appellant argues that the court's instruction is erroneous, since it did not specifically instruct the jury that *all* of the requirements in the instruction must be proven before recovery could be had. However, the court's Instruction No. 7 above cited is a full and adequate statement of the law which would properly instruct the jury that the plaintiff would have to prove these material facts before he could recover. The omission of the word

"all" would not be fatal. The manner in which the instruction is worded requires all the elements stated to be proven.

Appellant further complains of the granting of Plaintiff's Instruction No. 7, which reads as follows:

"If you find from a fair preponderance of the evidence that the plaintiff and his wife, on July 26, 1952, were in a divorce case and that he believed, and had a right to believe, that the defendant and his wife were intending to meet each other in the vicinity of Winthrop and Thirty-Fourth Streets in the City of Indianapolis, Indiana, and that plaintiff went to said place to take pictures and procure evidence for the divorce action, and that he did go to said place in company with his sister and his sister's husband, and that he saw the defendant there, and that an altercation took place between him and the defendant, and if you further find that the defendant struck plaintiff and that plaintiff had no deadly weapon, and used no deadly weapon against the defendant, and that in fact plaintiff did not assault the defendant with intent to take his life, and that the defendant knew that plaintiff did not assault him with an intent to take his life, but notwithstanding such knowledge, if you so find, following said altercation, procured, through the Prosecutor's Office in Marion County, Indiana, an affidavit against said plaintiff charging him with assault and battery with intent to take his life and to murder him, then the court instructs you that defendant acted without probable cause and if you further find that the defendant acted with malice in procuring such affidavit and that such affidavit was dismissed for want of prosecution and terminated favorably in favor of the plaintiff, then your verdict should be for the plaintiff."

Appellant's objections to this instruction were that it was immaterial whether the plaintiff assaulted the defendant with "intent to take his life"; the instruction is confusing and misleading; it assumes that

only "an altercation" took place whereas there is evidence that physical violence ensued; and that it contains harmful and damaging surplusage.

While perhaps not a model instruction, it seems to us that it contains the essential elements necessary for a recovery by the plaintiff, and we do not see wherein the defendant was harmed thereby. Further, it was the duty of the court to so instruct the jury on the issue of probable cause. *Cleveland, etc., R. Co.* v. *Dixon, supra.* Nor is it objected to for the reason that there was no evidence to support the factual situation contained in such instruction.

Appellant further urges us that the court erred in admitting into evidence plaintiff's Exhibits numbers eight (8) through twenty-six (26) inclusive. These exhibits were flat round discs which were used for the recording of certain telephone conversations. They were introduced in evidence and played to the jury. Appellant's objection was based on the ground that the material contained in such discs was not germane or relevant to the issues. We must point out that the contents of the discs are not in the bill of exceptions or record before us. We therefore cannot conclude in the absence of their contents that prejudicial error was committed. *King* v. *State* (1956), 236 Ind. 268, 139 N. E. 2d 547.

Judgment affirmed.

Ax, C. J., Cooper, J., and Myers, J., concurring.

NOTE.—Reported in 175 N. E. 2d 50. Transfer denied, Arterburn, C. J., Landis, J., concurs with opinion reported in 183 N. E. 2d 204.