Scott E. **BANISH**, Plaintiff-Appellant,

v.

William J. **LOCKS** et al., Defendants-Appellees.

No. 17143.

United States Court of Appeals
Seventh Circuit.

July 16, 1969.

Benjamin Piser, Dempsey A. Cox, Piser & Cox, South Bend, Ind., James G. Mahorner, White, Phipps, Linn, Furnell & Mahorner, Tallahassee, Fla., for appellant.

R. Kent Rowe, Bruce H. Stewart, Gerald A. Kamm, Doran, Manion, Boynton & Kamm, Arthur W. Goulet, Roland Obenchain, Jr., Milton A. Johnson, South Bend, Ind., for appellees.

Before FAIRCHILD and CUMMINGS, Circuit Judges and CAMPBELL, District Judge.

CAMPBELL, District Judge.*

Plaintiff originally filed a six count complaint in which he charged the defendants, the Sheriff of St. Joseph County, Indiana and certain deputy sheriffs and other county officials, with false arrest, false imprisonment and malicious prosecution. Because the officers were acting under color of state law, the plaintiff also alleged violations of the federal Civil Rights Act. (42 U.S.C. § 1983). All of the allegations relate to the circumstances surrounding the arrest and prosecution of plaintiff for the alleged murder of his father. The essential facts are:

Plaintiff's father was stabbed to death in his home in South Bend, Indiana on August 23, 1965. Prior to that time, on June 3, 1965, plaintiff left home under very unusual circumstances. He had driven his father's car to Tower Hill at Warren Dunes State Park on Lake Michigan, left his clothes and the car on the beach, and hitchhiked to Michigan City and then left by train for Chicago. Plaintiff obviously attempted to indicate that he was the victim of an accidental death or suicide. After he left home he had no further contact with his parents until after the death of his father. Plaintiff explains this mysterious departure as a means to facilitate his enlistment in the Army.

On August 30, 1965, seven days after the death of his father, plaintiff attempted to enlist in the Army using his real name at Fort Wayne, Indiana. He informed draft officials there that they could verify his draft classification at South Bend. He was taken into protective custody shortly thereafter, and while in custody, told police that at the time of the murder he was fishing for salmon off the coast of California. He also explained that blood found on his trousers was fish blood. Indiana State Police laboratory examinations later indicated that the blood on his trousers was of human origin and contained properties of type "AB", the same type as that of the victim.

Plaintiff submitted to a polygraph examination and on August 31, 1965, the police polygraph examiner stated that it was his opinion that plaintiff was definitely deceptive to the following questions:

(A) "On August 22, 1965 between 11:30 to midnight at your home did you yourself kill your father by stabbing him?"

(B) "Regarding the death of your father at your home on August 22, 1965 did you yourself kill him with a knife?"

On the morning of October 21, 1965 a defendant, deputy sheriff, went to plaintiff's home and told him that the Sheriff, "Wanted to talk to him". The following crucial circumstances are clearly set forth in the memorandum of the trial judge.

---

* Chief Judge Campbell of the United States District Court for the Northern District of Illinois is sitting by designation.

Deputy Niedbalski waited while plaintiff's mother fixed him some breakfast, following which, in plaintiff's words, he accompanied the Deputy down to the Sheriff's Department "voluntarily". (Ex. 1(a), p. 397). The Deputy and the plaintiff arrived at the Sheriff's Department at about 10:15 A.M. and the plaintiff went into the conference room at about 10:30 or 10:45 A.M. (Ex. 1(a), pp. 398 & 400.) While in the conference room the plaintiff was told that a laboratory report showed that blood specimens on a pair of his pants were human blood, type AB, which was the same type as that of the murder victim. (Ex. C, Ex. 1(a), pp. 403–405). Some time after 12:00 Noon, the plaintiff, a Mr. Roberts, and the defendant James, went to the City Police Station for a lie detector test to which the plaintiff willingly consented. (Ex. 1(a), pp. 407 & 670). About one and one-half (1½) hours were required to set up the polygraph test equipment and about another hour was necessary for the test itself. (Ex. 1(a), p. 408). The results of the tests were unfavorable to the plaintiff. (Ex. 1(a), pp. 409, 462).

It was about 4:00 P.M. when the plaintiff returned to the conference room in the Sheriff's Department. At this time, the plaintiff had a conversation with defendant, Sheriff Locks, who told him, among other things, that the situation "looked pretty bad" and that if he killed his father, he should come clean. The plaintiff subsequently agreed to confess, and Sheriff Locks told him not to confess to anything he didn't do. Shortly thereafter, defendant Schuttrow came into the room and explained to plaintiff Banish the various crimes with which he could or might be charged and the penalties attached thereto. (Ex. 1 (a), pp. 410–413). The plaintiff thinks that he was advised of his right to counsel when he first came into the Sheriff's Department. (Ex. 1 (a), p. 423). At any rate, before the confession was taken, defendant Schuttrow advised Banish of his constitutional rights. (Ex. 1(a), p. 424). The confession was formally typed about 6:50 P.M. (Ex. 1(a), pp. 19 & 30). (Memorandum pp. 7–8).

A few days later a hearing commenced in the South Bend City Court to determine whether probable cause existed to warrant binding plaintiff over to the grand jury. At the conclusion of the hearing, which lasted four and one-half days, the city court judge found that there was no probable cause that plaintiff committed the crime with which he was charged and plaintiff was discharged. The transcript of that lengthy city court hearing was introduced into evidence before the District Court and the parties indicated to the court that all of the relevant material and pertinent facts necessary for the determination of the issues were included in that transcript, and other evidence before the trial court. Plaintiff and the various defendants filed motions for summary judgment. (Rule 56 Fed.R. Civ.Proc.). After full consideration of the entire record, the trial court found that there was no genuine issue as to any material facts and further found that the defendants were entitled to judgment as a matter of law. Accordingly, plaintiff's motion for summary judgment was denied and the defendants' motions for summary judgment were granted.

■ In reaching that conclusion the trial judge correctly observed that the question as to whether the defendants acted with probable cause in the arrest, detention and prosecution of plaintiff is, "the pivotal and determinative factor upon which all six counts will either survive or fall". (Memorandum of Trial Court, p. 3). In an action for malicious prosecution, probable cause is an essential element of plaintiff's case. Dwyer v. McClean, 133 Ind.App. 454, 175 N.E.2d

50 (1961); Duckwall v. Davis, 194 Ind. 670, 142 N.E. 113 (1924); West's Indiana Law Ency., Malicious Prosecution § 4; Prosser, Law of Torts (3rd Ed.) pp. 859–866. Probable cause, based on a reasonable belief in the guilt of the person arrested and imprisoned is also a defense to law enforcement officials accused in a civil action with false arrest and false imprisonment. Prosser, Law of Torts (3rd Ed.) p. 135; Restatement, Torts (Second) § 121 (1965). This long established defense to false arrest and false imprisonment charges was recognized by the United States Supreme Court and held applicable to actions brought under the Civil Rights Act, section 1983, in Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), wherein the Court stated:

"Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. Restatement, Second, Torts § 121 (1965); 1 Harper & James, The Law of Torts § 3.18 at 277–278 (1956); Ward v. Fidelity & Deposit Co. of Maryland, 179 F.2d 327 (C.A. 8th Cir. 1950). A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does". (386 U.S. at 555, 87 S.Ct. at 1218).

As stated by the trial judge in his memorandum, there was no dispute as to the facts or circumstances surrounding the arrest. The record supports this conclusion. There being no conflict in the evidence, the question of probable cause was a question of law for the court. Dwyer v. McClean, *supra*; Prosser, Law of Torts (3rd Ed.) p. 866; Restatement, Torts (Second) § 673. The Supreme Court indicated in Pierson v. Ray, *supra*, that the same principles

governing tort liability traditionally, apply to Civil Rights actions brought under section 1983.

"Part of the background of tort liability, in the case of police officers making an arrest, is the defense of good faith and probable cause.

We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983." (386 U.S. at 556–557, 87 S.Ct. at 1219).

As the authorities above indicate, under the general principles of tort liability, the issue of probable cause is to be determined by the court when there is no disagreement as to the facts or circumstances surrounding the arrest, detention and prosecution.

In determining the question of probable cause, the trial court first concluded that the arrest took place in the evening of October 21, 1965 and that therefore the defendants were aware of all of the facts learned from the plaintiff's very detailed confession. We find no error in this conclusion. We also agree with the court's conclusion that probable cause existed at the time of the arrest. As the court indicated, "the facts and circumstances which defendants had before them were many". (Memorandum p. 12). The court singled out from all of the many incriminating facts and circumstances, three items it considered of principal importance:

1. The Indiana State Police Hematological Examination report which showed that the stains on the plaintiff's bluejeans (pants) were blood, type AB, the same blood type as the murder victim. (Ex. C).

2. The report of the polygraph examiner made on August 31, 1965, and

which concluded with the opinion that the plaintiff was deceptive with respect to the target issue. (Ex. B). The second polygraph test, given on October 21, 1965, was also unfavorable to the plaintiff. (Ex. 1(a), pp. 409, 462).

3. The October 21, 1965 confession of the plaintiff that he killed his father on August 22, 1965. (Ex. D).

■ These facts, plus the many others before the court, unequivocally support the court's conclusion that as a matter of law probable cause for the arrest existed. We further suggest that even if the trial court adopted the theory of plaintiff, that the arrest occurred in the morning of October 21, it would have been justified in finding that the defendants possessed sufficient facts to establish probable cause for an arrest at that time. Two of the principal items set forth above were available to the police in the morning. And, as we have indicated in our recitation of the facts, there were a number of other items to support a reasonable and well founded belief that plaintiff had committed the offense charged. Cf. Thornton v. Buchmann, 392 F.2d 870 (7th Cir. 1968); and Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968).

Plaintiff also argues that his confession was obtained through coercion and in violation of his constitutional rights, and that this in and of itself supports an action under the Civil Rights Act (§ 1983). We find no reference to this theory in plaintiff's original complaint filed in the District Court, and it is clear from a reading of the entire record that it was never presented there. Aside from this fact, in considering the confession as a fact or circumstance supporting the existence of probable cause, the court also concluded that the confession was voluntarily given and was not coerced.

Accordingly, the judgment appealed from is affirmed.