361 N.E.2d 1227 (1977)
CITY OF INDIANAPOLIS and Robert L. Snow, Defendants-Appellants,
v.
Arnold SATZ, Plaintiff-Appellee.
No. 2-175A14.
Court of Appeals of Indiana, First District.
April 26, 1977.
Rehearing Denied May 19, 1977.
*1228 Gary R. Landau, Corp. Counsel, William L. Soards, Paul G. Roland, Rex P. Killian, Ruckelshaus, Bobbitt & O'Connor, Indianapolis, for defendants-appellants.
Howard J. DeTrude, Jr., Kightlinger, Young, Gray & DeTrude, Karl Faust, John B. Joyce, Faust & Joyce, Indianapolis, for plaintiff-appellee.
LOWDERMILK, Judge.

CASE SUMMARY
This cause was transferred from the Second District to this office in order to lessen the disparity in caseloads among the Districts.
Defendants-appellants City of Indianapolis (the City) and Robert L. Snow appeal from the trial court's judgment in favor of plaintiff-appellee Arnold Satz in a jury trial.
We affirm.

FACTS
The City employed Snow as a policeman; he arrested Satz while off duty on May 8, 1970, and signed the informations by which Satz was charged with being disorderly and interfering or taunting a police officer.
*1229 On June 2, 1970, the day when Satz was to appear and answer said charges, he signed the following release:
"KNOW ALL MEN BY THESE PRESENTS,
"That I Arnold Satz , for and in consideration of certain charges, enumerated below, being nollied [sic] upon the information received from certain investigation by the Indianapolis Police Department this day by and/for the City of Indianapolis, do hereby release and forever discharge said City of Indianapolis from any and all suits, actions, causes of action, claims and demands of any nature whatsoever which I ever had, now have or may have against the City of Indianapolis, for or in any way growing out of or arising from or based upon a certain accident or injuries or damages resulting to me therefrom by
your arrest for the charges of Disorderly Person and Taunting a Police Officer. _____________________________________________________ _____________________________________________________ _____________________________________________________
"I further recite that the City of Indianapolis denies, and at all times has denied, any legal liability on account of said accident and injuries to me, and this settlement is made by way of compromise.
"I further recite that at the time of sustaining said damage, and at the time of the execution of this release, I was more than 21 years of age.
"I further recite that the above mentioned consideration is the sole and only consideration for which this release is given."
He executed it at a meeting attended by his wife, an attorney who had entered an appearance for him in the criminal case, an attorney representing the Indianapolis Police Department, Snow, and two IPD majors  one of whom was an assistant to the chief of police. The meeting took place in the office of the assistant to the chief. The IPD attorney explained the release to Satz, who exited with the other attorney and returned to sign the release. Satz had attended law school for three years.
Satz commenced this cause on July 7, 1970, by complaint against Snow and Leonard Koplow, d/b/a The Squire Shop,[1] by whom Snow was employed as a security guard at the time when Satz was arrested. The complaint alleged that Snow arrested Satz without probable cause, used unwarranted force to handcuff Satz, and brought unfounded charges against Satz. On August 10, 1970, Satz filed an amended complaint which included the City as a defendant and demanded $25,000 in compensatory damages from all defendants as well as $25,000 in punitive damage from the City and Koplow.
The City moved to dismiss Satz's amended complaint on August 17, 1970, raising the defense of lack of statutory notice to the City. Said motion was denied. The City reasserted this defense in its answer to the amended complaint.

ISSUES
1. Whether Satz's claim was barred for lack of statutory notice to the City.
2. Whether the trial court erred in excluding certain testimony.
3. Whether there was sufficient evidence to support the jury's verdict.
4. Whether the jury's award of $5,000 in damages was erroneous.

Issue One:
The City claims that the trial court erred in denying its motion for judgment on the evidence inasmuch as there was an absence of evidence that Satz gave it the notice required by statute. Ind. Ann. Stat. § 48-8001 (Burns Supp. 1970) provided:
"Hereafter no action or actions of any kind for damages arising from any negligence, wilfulness, nuisance or other tort of any civil city ... that causes injury to any person ... and regardless of to whom any such action or actions may accrue, shall be brought or *1230 maintained against any civil city . . unless there is first served upon either the mayor or clerk or clerk treasurer of any such city ..., either by delivery thereto in person or by registered mail with return card, a written notice of the occurrence complained of, setting out therein a brief general description of the date and time, the place, the conditions and cause, the nature and extent of the injury to person... . The notice shall be dated and signed by the person giving the same and shall be served as aforesaid so as to be received by some such municipal official aforesaid within sixty (60) days after the occurrence complained of, regardless of what causes of action may arise or result therefrom ...."[2]
Satz posits that the existence of statutory notice is not an issue in the case at bar. He is wrong.
He relies on Thompson v. City of Aurora (1975), Ind., 325 N.E.2d 839, which states:
"Undoubtedly, a plaintiff must give a city the notice which the statute mandates. Under our new rules of procedure, however, a plaintiff is no longer required to plead fulfillment of procedural precedents. When a plaintiff fails to give the required notice, the city has a defense cognizable under TR. 12(B), which must be asserted in a responsive pleading (answer) to plaintiff's complaint. The city must state the defense in short and plain terms. TR. 8(B). Lack of notice is thus placed in issue, and plaintiff bears the burden of proving compliance with the statute." 325 N.E.2d 843. (Our emphasis)
The issue of statutory notice was raised inasmuch as the City conformed to the pleading rules set forth by our Supreme Court in Thompson, which did not abrogate the rule that statutory notice of a claim to a city is a condition precedent to recovery on said claim.
However, we hold that the City's efforts to investigate Satz's complaints to the IPD, to establish a bar to his claim, and to settle his claim constituted substantial compliance with the notice statute.
Two recent opinions of this court draw a fine line between substantial compliance and non-compliance. In Geyer v. City of Logansport (1976), Ind. App., 346 N.E.2d 634, the Second District found substantial compliance where the defendant city  through the sheriff and through its insurer  conducted investigations of the accidental shooting of the plaintiff by a city policeman; the court reasoned that the purposes of the notice statute had been satisfied. Another plaintiff shot by a city police officer was involved in City of Fort Wayne v. Cameron (1976), Ind. App., 349 N.E.2d 795, in which a majority of the Third District held that there was no compliance with the notice statute although the shooting was investigated. The majority noted that the police department merely complied with departmental rules and regulations which mandated an investigation whenever an officer fired a weapon while on duty; they stated:
"Substantial compliance means actual compliance in respect to the substance essential to every reasonable objective of the statute ...
"The objectives of our notice of claim statute have been stated to be prompt notification to the city of a claim potential in order that the city may investigate all facts pertaining to its liability and prepare its defense or adjust the claim ...
"Actual notice of the occurrence in the absence of knowledge that a claim is intended does not satisfy these statutory objectives. Neither does a routine investigation by some department or division of municipal government which does not have as its motivation the claim potential to which the statute refers. In addition to settlement potential which may be lost *1231 if not pursued promptly after injury, we cannot ignore the differences which exist between an investigation conducted by persons untrained in litigation and which is conducted for internal or administrative purposes; and an investigation conducted under the prospect of, and for the purpose of considering, litigation and civil liability." 349 N.E.2d 800. (Citations omitted)
We conclude that the present rule is that where the purpose of the notice statute has been fulfilled there is substantial compliance with said statute inasmuch as "we see no need to endorse a policy which renders the statute a trap for the unwary where such purpose has been satisfied." Galbreath v. City of Indianapolis (1970), 253 Ind. 472, 479-480, 255 N.E.2d 225, 229 (Original emphasis). To require literal compliance with the notice statute where a city has investigated the facts pertaining to its liability on a claim, has prepared a defense to the claim, and has settled the claim would be to exalt form over substance.
There was substantial compliance with the notice statute in this case inasmuch as the City investigated Satz's complaints to the IPD with the result that it sought to settle his claim and set up a bar to it; these actions were obviously aimed at protecting the City from liability in litigation of Satz's claim. The purpose of the notice statute was thereby satisfied.

Issue Two:
Snow asserts that the trial court erred in sustaining objections to questions addressed to IPD Major Harry J. Wolff and to attorney Irving L. Fink, who both attended the meeting where Satz signed the release. Fink had entered an appearance for Satz in the criminal matter.
We can reverse because of these rulings only if they were erroneous and if the excluded testimony was vital to Snow's case; any valid theory of exclusion will suffice to sustain the trial court's rulings. American United Life Insurance Co. v. Peffley (1973), Ind. App., 301 N.E.2d 651.
Following the rulings on the objections to the questions asked of Major Wolff, counsel for Snow made an offer to prove stating that the witness would have testified that he opposed the nolle-release settlement with Satz. However, Major Wolff had already testified to his opposition. Inasmuch as testimony identical to that excluded was already in evidence these rulings were not abuses of the trial court's discretion to exclude cumulative evidence. Killion v. Updike (1974), Ind. App., 316 N.E.2d 837.
As to the rulings on the objections to the questions propounded to Fink, Satz contends that Snow waived an error by failing to set forth in his appellant's brief verbatim statements of the questions, objections, and offers to prove. While such treatment would aid the court, it is not required by Ind. Rules of Procedure, Appellate Rule 8.3(A). Therefore, Satz's waiver argument fails.
The offers to prove following the exclusion of Fink's testimony stated that he would have testified (1) that Major Wolff had been against the settlement, and (2) that Fink had advised Satz about the release. Major Wolff had already testified to his opposition; the IPD counsel had already testified that Satz said he had consulted with his attorney who had explained the release. Therefore, these rulings also did not constitute abuses of the trial court's discretion to reject cumulative evidence. Killion v. Updike, supra.

Issue Three:
Snow contends that there was insufficient evidence to sustain the jury's verdict inasmuch as (1) Snow proved that Satz executed the release while Satz did not show that the execution was procured by duress, and (2) the release negated two elements of the tort of malicious prosecution.
A release is a contract by which a party discharges his existing right of action to the person against whom the right of action may be enforced. 25 I.L.E., Release *1232 § 1 (1960). A valid release bars the releasor's recovery on the right of action released. Id., § 6.
For a release to be valid the releasor must give his real consent. Id., § 5. Therefore, a release given under duress is invalid and not binding on the releasor. 76 C.J.S. Release § 28 (1952).
The releasor's state of mind is a question for the finder of fact who may be aided by extrinsic evidence which is admissible to explain the circumstances of the execution. Wecker v. Kilmer (1973), 260 Ind. 198, 294 N.E.2d 132.
A releasor seeking to void his release on the ground of duress must show that he was compelled to enter into it by actual or threatened violence or unlawful restraint of his person. See Williamson v. Bendix Corporation (7th Cir.1961), 289 F.2d 389, and cases cited therein. There is no duress where the releasor has the freedom to choose between executing a release and relying upon his legal rights. 76 C.J.S. Release § 28.
We recognize that there was evidence which would have supported a finding that Satz did not execute the release under duress. See Stone v. Weller (1891), 128 N.Y. 655, 28 N.E. 653. But there was also evidence that the IPD majors became angry when they learned that Satz had requested a jury trial in the criminal matter; they told him that they planned to have the charges nolled  but that he would have to execute a release; if he persisted in asserting his right to a jury trial they would delay the criminal matter so that he would be unable to operate his business and so that the witnesses would be unavailable. From this evidence the jury could infer that Satz's freedom of choice was overborne by threats.
It is axiomatic that we cannot weigh the above evidence or judge the witnesses' credibility. We cannot reverse the finding of duress implicit in the jury's verdict inasmuch as the evidence most favorable to the verdict, together with the reasonable inferences therefrom, amounts to substantial evidence of probative value in support of said finding.
The finding of duress is also dispositive of Snow's contention that, due to the release, Satz did not prove two of the elements of malicious prosecution which this court set forth in Stivers v. Old National Bank (1970), 148 Ind. App. 196, 264 N.E.2d 339:
"The plaintiff in an action for malicious prosecution must prove the following: That defendant instituted a prosecution or caused it to be instituted; that defendant acted maliciously and without probable cause; and that the prosecution was terminated in plaintiff's favor ..." 148 Ind. App. 200, 264 N.E.2d 342. (Original emphasis; citations omitted)
We refer Snow to W. Prosser, Law of Torts § 119, at 839-840 (4th Ed. 1971):
"[W]here charges are withdrawn or the prosecution is terminated at the instigation of the accused himself, or by reason of a compromise into which he has entered voluntarily, there is no sufficient termination in favor of the accused. Sometimes it is said that this is an admission of probable cause . .. If the consent is found to have been given under protest because of `duress,' however, the courts have refused to hold that the cause of action is lost."

Issue Four:
Snow points out that Satz (1) did not seek punitive damages from him and (2) did not prove any special damages  e.g., loss of earnings, or medical and legal expenses. He maintains that the jury erroneously awarded Satz damages for injury to reputation, embarrassment and humiliation, mental pain, and physical pain, inasmuch as he classifies these items as punitive damages. However, it is Snow who is in error.
The items of which he complains are recoverable as compensatory damages. 22 *1233 Am.Jur.2d, Damages §§ 105, 156 (1965); 25 C.J.S. Damages §§ 62-63, 70b (1966); Prosser, supra, at 849-850.
Like a defamation action, a malicious prosecution action involves compensation for an injury to character. A verdict will rarely be disturbed on the ground that the jury awarded too much compensation for such an injury. We will reverse only if the damages are so outrageous as to induce the belief that the jury acted from prejudice, partiality, passion or corruption. Dwyer v. McClean (1961), 133 Ind. App. 454, 175 N.E.2d 50; Evansville and Terre Haute Railroad Company v. Talbot (1891), 131 Ind. 221, 29 N.E. 1134.
Having examined the record we cannot say that the damages awarded Satz by the jury were excessive.
Judgment affirmed.
ROBERTSON, C.J., and LYBROOK, J., concur.
NOTES
[1] The jury returned a verdict in favor of Koplow.
[2] For the present notice requirements, see IC 1971, 34-4-16.5-7 through 34-4-16.5-12 (Burns Code Ed., Supp. 1976).