CARL SNIDER ET AL. *v*. GEORGE LEWIS.

[No. 171A21. Filed November 23, 1971. Rehearing denied January 3, 1972. Transfer denied February 8, 1973.]

*John E. Eisele*, of Anderson, for appellants.

*H. Harold Soshnick, Charles T. Bate*, of Shelbyville, *Keith C. Reese*, of Indianapolis, for appellee.

LOWDERMILK, J.—Mr. John E. Eisele, counsel for the defendants-appellants in this cause, did not participate in this action in any way until after the trial of the cause. He prepared defendants-appellants' brief and argued the same before this court.

On April 1, 1968, the defendants-appellants in this cause brought an action against the plaintiff-appellee, George Lewis, and twenty-six other defendants in the United States District Court, Southern District of Indiana, under Cause No. IP-68-C-127. This suit alleged that all defendants therein conspired to finance and build a new junior-senior high school in Hancock County, Indiana, conspired to create an illegal school building corporation, conspired to obtain school building certificates by fraudulent means, conspired to deny access to school records, conspired to the throwing of garbage and explosives, and finally, conspired in preventing the plaintiffs

in Cause No. IP-68-C-127 in the United States District Court, Southern District of Indiana, to remonstrate against said school and holding company method of financing with threat of reprisals.

On October 10, 1968, the Honorable William E. Steckler, Judge of the United States District Court for the Southern District of Indiana, in which appellants' suit was pending, rendered a judgment in favor of the defendants and dismissed the action without prejudice, and entered the following record and judgment, to-wit:

"Come now the defendants by their respective counsel pursuant to the Court's order of September 11, 1968, for oral argument on all pending motions, but the plaintiffs fail to appear in person or by counsel.

"The Court hears from counsel for the defendants as to the status of the case and also hears oral arguments on the various pending motions addressed to the insufficiency of the plaintiffs' complaint.

"Counsel for the plaintiffs arrives in the courtroom after the Court has heard the arguments of the attorneys for the defendants and states in open court that the original complaint as filed is insufficient.

"After considering the various motions addressed to the insufficiency of the complaint, the briefs in support of the motions, with no response being filed by the plaintiffs as ordered by the Court on September 11, 1968, hearing arguments of the attorneys for the defendants, and hearing the statement of counsel for the plaintiffs, the Court now finds that:

"1. The defendants' motions to dismiss are well taken and the action should be dismissed.

"2. The Court, in view of its working conditions, should dismiss the action for failure of counsel for plaintiffs to respond to the defendants' motions as required by order of September 11, 1968.

"IT IS THEREFORE ORDERED that the action be dismissed without prejudice, costs taxed against plaintiffs."

Afterward, on December 12, 1968, George Lewis filed, in the Hancock Circuit Court, his lawsuit against the appellants for malicious prosecution. In appellee Lewis' complaint he

alleged that his reputation in the area and community of Greenfield, Indiana, as well as his reputation as a lawyer and judge of the Hancock Superior Court, had been damaged, and that the appellants maliciously and without probable cause brought an action against him in the United States District Court, Southern District of Indiana. In this complaint appellee further alleged that the United States District Court case brought by the defendants-appellants against him was dismissed by the court without prejudice on October 10, 1968. The prayer of the complaint asked for relief of $15,000 compensatory damages and $75,000 punitive damages.

In the lawsuit brought by the appellee against appellants in the Hancock Circuit Court, the Honorable George B. Davis, the duly elected judge thereof, disqualified himself and the Honorable Carl T. Smith, Judge of the Madison Circuit Court, was named special judge on January 2, 1969, and qualified and assumed jurisdiction of the cause on January 3, 1969; Judge Smith ruled the defendants to answer plaintiff's complaint within fifteen days from the date of his order. The defendants, in response thereto, filed a motion for extension of time within which to plead, which motion the special judge sustained and at that time ordered the defendants to plead by March 4, 1969, or suffer default. On March 10, 1969, the special judge defaulted the defendants and set March 29, 1969, as the date for proof as to damages.

On April 15, 1969, the defendants-appellants filed their motion to vacate and set aside the default rendered against them and also filed a motion for change of venue, which combined motions are as follows:

"1. That on Friday, March 7, 1969, counsel for defendants mailed to the Clerk of this Court the defendants' Motion for Change of Venue, Answer and Request for Jury Trial, and on the same date counsel mailed copies of said pleadings to Keith C. Reese, attorney for plaintiff, who acknowledged receipt of said pleadings on the morning of March 8, 1969, at his office in Indianapolis, Indiana.

"2. That said pleadings were not received by the Clerk of this Court until the morning of March 10, 1969.

"3. That when said pleadings were received the Clerk did not file mark them but placed them in a mailing envelope addressed to Carl T. Smith, Special Judge herein at his Anderson, Indiana business office. That said envelope remained in the Clerk's office during most of the day of March 10 until the outgoing mail was delivered to the U. S. Postal authorities sometime in the late afternoon of said day.

"4. That the Clerk, in not file marking said pleadings upon arrival in her office, was following the instructions of the Circuit Court and the general prevailing custom in all cases wherein special judges had assumed jurisdiction.

"5. That said pleadings were not shown as received or entered upon any docket by the Clerk, all in pursuance with her instructions and the prevailing custom.

"6. That the delivery of said pleadings to the Clerk on the morning of March 10, 1969, and her subsequent disposition and mailing thereof are shown by the attached affidavits which are hereby incorporated and made a part hereof.

"7. That after the Clerk placed the said pleadings in a postal envelope addressed to Judge Smith and while they remained in her office as aforesaid, Judge Smith arrived at the Hancock Circuit Court and proceeded to enter said default against these defendants.

"8. That the Clerk of this Court was not aware of Judge Smith's presence and did not deliver said pleadings to him.

"9. That at the time said default was entered Judge Smith did not know the said pleadings had been received by the Clerk, all as stated herein.

"10. That Judge Smith received said pleadings on the morning of March 11, 1969, at his office in Anderson, Indiana.

"11. That said Court did not have jurisdiction to enter the default judgment on March 10, 1969, for the reason that the Motion for Change of Venue had been received by the Clerk prior to the entry of said default, thereby divesting this Court of all jurisdiction in the matter other than to grant the change of venue.

"WHEREFORE, defendants pray that the default judgment be vacated and that the Motion for Change of Venue be granted."

(Affidavits attached of Earl Kingery, Superintendent of Mails at Greenfield, Indiana, and of Patricia Elmore, Clerk of Hancock County.)

Afterward, on May 9, 1969 plaintiff-appellee filed his demurrer before the Honorable Carl T. Smith, Special Judge, and the same was set for oral argument on May 17, 1969, at 9:30 A.M.

And afterward, to-wit, May 14, 1969, the Honorable Carl T. Smith, Special Judge, entered his order removing the cause from the calendar on May 17th and re-set the same for May 24th at 9:30 A.M. for argument on the demurrer.

And then, on May 24, 1969, before the Honorable Carl T. Smith, Special Judge, argument was had on the demurrer and on defendants' motion to vacate and set aside default and also on the motion to grant change of venue. The entire matter was taken under advisement and the court found on said date that defendants' brief in support of motion was presented and should be shown filed on April 15, 1969.

On August 25, 1969, the Honorable Carl T. Smith, Special Judge, made the following finding:

"The Court finds the defendants forwarded to the Clerk of this Court and the Clerk of said county received for filing March 10, 1969, the following: Answer of defendants in Two Paragraphs, Motion for Change of Venue from County. Henry, Rush, Shelby, Marion, Hamilton and Madison Counties are now named to a panel from which to strike. The parties are ordered to proceed with the striking according to law."

It must be noted that Special Judge Smith ruled on neither appellee Lewis' demurrer nor on defendants-appellants' motion to vacate and set aside the judgment.

On September 2, 1969, the parties struck counties, Shelby County remained, and the cause was ordered changed to Shelby County and ten days granted to perfect the change.

On the morning of March 10, 1969, when the Special Judge defaulted the defendants herein the Clerk of the Hancock

Circuit Court received in the United States mail, addressed to the Hancock County Clerk for filing in this cause the following papers:

Defendants' Motion for Change of Venue;
Defendants' Answer to Plaintiff's Complaint;
Defendants' Request for Trial by Jury.

Said Clerk stated that she did not endorse the date upon the foregoing pleadings, but instead, and within one hour after receiving them, placed the three pleadings above listed in a prepaid wrapper for mailing to the Honorable Carl T. Smith, and mailed them to him at the Madison County Circuit Court, Court House, Anderson, Indiana.

Defendants-appellants filed their affidavit setting out that the Clerk did receive said pleadings as claimed and that she swore thereto, and with the further statement that it was a rule of the court that the Clerk not file any pleadings mailed to her for filing before a Special Judge, but that they be sent to the Special Judge by her. In the case at bar these pleadings were laying in the Clerk's office, addressed to Judge Smith at his chambers in Anderson, Indiana, and he entered the Hancock Circuit Courtroom without the Clerk's knowledge, and with Judge Smith having no knowledge that any pleadings had been forwarded to the Clerk, and with full knowledge that none had been forwarded to him by defendants-appellants' counsel.

It is under this set of facts that Judge Smith defaulted the defendants, as they had been ordered to answer on or before March 4, 1969, or suffer default. Defendants-appellants, represented by an Indianapolis law firm, mailed these pleadings to Judge Smith at the Clerk's office in Hancock County and the Clerk, acting in compliance with rules and orders of the court, did not mark the pleadings filed, but was forwarding them on and at the time that Special Judge Smith entered the default judgment the defendants-appellants were in default of the rule.

Plaintiff-appellee Lewis filed his demurrer to defendants' motion to vacate and set aside the default on the grounds of insufficient facts in said motion for the following reason: "1. The defendants' motion does not state facts sufficient to constitute a cause of action to set aside default", together with his memorandum in support thereof, which memorandum reads as follows, to-wit:

## *"MEMORANDUM*

"In support of demurrer, the plaintiff would respectfully point out to the Court that Burns Indiana Statute 2-1102 reads as follows:

" 'If from any cause, either party shall fail to plead or make or make up the issues within the time prescribed, the Court shall forthwith enter judgment as upon default, unless for good cause shown, further time be given for pleading, on the payment of costs occasioned by the delay.'

"Also, Burns, Indiana Statute 2-1068 reads as follows:

" 'After trial and before final judgment, the court may, in its discretion and upon such terms as may be deemed proper for the furtherance of justice, order that any pleading be amended by correcting any mistake in name, description, legal effect, or in any other respect; or by inserting, striking out, or modifying any material allegation, in order that the amendment will not deprive a party of any substantial right.

" 'The court shall relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect, on complaint filed and notice issued, as in original actions within two (2) years from and after the date of the judgment, except where judgment on default has been rendered in a suit to quiet title to real estate in which case the complaint for relief from judgment on default shall be filed within one (1) year from and after the date of judgment quieting title, and if the complaint is not filed within the period of time herein prescribed, then the action shall forever be barred: Provided, That the provisions of this act pertaining to relief from judgment taken on default in a suit to quiet title to real estate shall apply to any judgment taken on default which is of record at the time of the passing of

this act, and which judgment was obtained in a suit to quiet title to real estate, and shall apply to any and all persons whether service of process be by summons or by publication.'

"If during term time a party requests to set aside a default judgment it can be entitled as part of the original action and designated as a motion and it may be treated as a complaint. See Gilmir v. Hurst, 117 Ind. App. 102, 69 N. E. 2nd 608.

"In Walsh v. Wasson, 213 Ind. 556, the Court noted that the complaint must state facts showing that the judgment was taken through the applicants mistake, inadvertence, surprise or excusable neglect. These are the same reasons set out in Burns 2-1068.

"In the defendants' motion to vacate and set aside default, they seem to not realize that a default was entered on March 10, 1969.

"Their motion merely states what they did and what the Court did. There is not one paragraph that sets out the fact that they were inadvertent, that the default was entered by their mistake, surprise or excusable neglect.

"In fact, their motion under oath indicates that pleadings were mailed three days after the Court's entry made on February 4, 1969 which reads as follows:

" 'Defendant's motion to extend rule to plead sustained. The defendants are ruled to plead by March 4, 1969 or suffer default.'

"In conclusion, a careful inspection of the motion to set aside the default discloses no grounds for setting the default aside and is plainly insufficient on its face."

The demurrer was later, on December 30, 1969, sustained by Judge Barger of the Shelby Circuit Court after that court had acquired jurisdiction of the cause.

The case was tried to a jury in the Shelby Circuit Court, on September 1st, 1970, through September 3rd, 1970, wherein the court tendered and read to the jury the court's final Instructions numbered 4 to 21 inclusive. In the interest of brevity, they will not all be set out, but only those of which error is complained by defendants-appellants, which errors were first claimed in the defendants-appellants' brief. There

were no written objections filed to any of said Instructions 4 through 21, both inclusive, by either of the parties, and this court can assume that no oral objections were dictated, as none have been brought into and made a part of the record by a general or special bill of exceptions, pursuant to Rules of the Supreme Court of Indiana, 1967, Rule 1-7 Instructions-Limitations Thereon-Objections (3), and also under the 1970 Trial Rule 51, Objections to Requests for Instructions Before Submission. The only difference between the Rules is that in the latter, objections given orally shall be taken by the reporter and shall thereby become a part of the record. *Barton* v. *Mirich Constr. Co.* (1971), 149 Ind. App. 395, 27 Ind. Dec. 30; 273 N. E. 2d 115.

Defendants-appellants timely filed their motion to correct errors, which was overruled on the same date on which it was filed.

The motion to correct errors is set out in nine pages of appellants' brief and is, for the most part, argument and is re-iterated in the argument portion of appellants' brief on the specifications of error. We shall, therefore, not copy said motion, as some of the specifications have not been set forth in the argument and are, of course, waived for that reason, pursuant to Rules of the Supreme Court, 1967 Rules, Rule 2-17 (H) and Rules adopted and effective January 1, 1970, AP Rule 8.3 (7).

This court will set out the specifications of error that it is required to pass upon at the time the court discusses and passes upon each of them in this opinion.

The first point hereunder to consider is:

A.   *The Trial Court Erred in Overruling the*
*Defendants' Motion to Dismiss*

Under the argument section of the brief, "The decision was contrary to law * * *", and under which assignment of error, specifically, subsection (D) thereof, the defendants-appellants'

motion to dismiss appellee Lewis' complaint in this case. The reasons assigned are that the defendants-appellants filed suit against a number of persons, including plaintiff-appellee herein, George Lewis, in the United States District Court for the Southern District of Indiana. This case in Federal Court was later dismissed without prejudice. (The decree of that court being hereinabove set out in this opinion will not be re-stated, for brevity.)

On December 12, 1968, plaintiff-appellee Lewis filed his complaint for malicious prosecution as a civil action in the Hancock Circuit Court and on March 10, 1969, the Honorable Judge Carl T. Smith, Special Judge, is alleged to have erroneously defaulted the defendants.

On August 28, 1970, defendants-appellants re-filed their original action against others and Lewis again in the United States District Court for the Southern District of Indiana, No. IP 70-C-518, which latter case was dismissed by defendant-appellant Carl Snider.

The defendants-appellants base their argument that the motion to dismiss in the case in the State court (that being the case at bar) was founded upon the proposition that plaintiff-appellee Lewis was not entitled to proceed with the instant case until the Federal case had been terminated in his favor.

In Cause No. IP 68-C-127 in the United States District Court the defendants appeared in open court by their respective counsel, pursuant to the court's order of September 11, 1968, for oral argument on all pending motions, set for October 10, 1968, but the plaintiffs (defendants-appellants herein) failed to appear, either in person or by attorney. The court heard from counsel for defendants as to the status of the case and oral arguments on various pending motions addressed to the insufficiency of the plaintiffs' complaint. Counsel for the plaintiffs (defendants-appellants herein) arrived in the court room after the court had heard the arguments of the attorneys for the defendants and admitted in open court that the original complaint as filed was insufficient.

The court then, after considering the motions and briefs in support of the motions, with no response filed by the plaintiffs (defendants-appellants herein) as ordered by the court, did, on September 11, 1968, find that the defendants' motion to dismiss was well taken and the action should be dismissed and did dismiss the action for failure of counsel for plaintiffs to respond as ordered and decreed that the action be dismissed without prejudice, taxing costs against plaintiffs (defendants-appellants herein).

Defendants-appellants contend that the motion to dismiss filed in the case at bar was founded upon the proposition that plaintiff-appellee, Lewis, was not entitled to proceed with the instant case until the Federal case had been terminated in his favor. They set out the law of Indiana on the four necessary elements of malicious prosecution.

The next contention is that in the case at bar the defendants-appellants, by their motion to dismiss, pointed out to the trial court that the Federal case, No. IP 68-C-127, filed by the defendants-appellants against Lewis and others had not yet terminated in his favor, citing as their authority Title 28, Federal Rules of Civil Procedure, Rule 41, with the contention that said Rule clearly establishes a dismissal with prejudice will bar a subsequent action between the same parties, but such a dismissal without prejudice will not, and cites *Sachs* v. *Ohio Nat. Life Ins. Co.*, C.C.A. 7th (1945), 148 F. 2d 128, 158 A.L.R. 688, certiorari denied 66 S. Ct. 92, 326 U.S. 753, 90 L. Ed. 452.

Defendants-appellants further contend that at the time the case at bar was tried the Federal case was still pending against Lewis and he had not yet attained a decision in his favor.

In the *Sachs* case, *supra,* which was for recovery under the constitutional (Illinois) super-added liability on shares of bank stock owned by the holder of shares of stock in which the plaintiff advanced the contention that the right to maintain this action had been adjudicated in a prior suit and

wherein it appears in the plaintiff's brief that in a similar action between the same parties the District Court refused to dismiss the complaint on defendant's motion, which challenged plaintiff's right to maintain an action as third party beneficiary. A summary judgment was subsequently entered in favor of the defendant, which was reversed upon appeal. Upon reinstatement, the cause was dismissed for want of prosecution under the subject matter. The court, on this proposition, said:

> "* * * We think no authority need be cited for the proposition that a ruling is not *res adjudicata* when made in a case subsequently dismissed for want of jurisdiction. Furthermore, the order refusing to dismiss was not final, which in itself removes it from the rule sought to be invoked."

We are of the opinion that the *Sachs* case is not relevant to the issues in the case at bar. The question before us and now being contended by defendants-appellants is whether a case dismissed in Federal Court without prejudice is a final judgment. In the *Sachs* case the cause was not dismissed without prejudice, and we shall discuss the distinction between *Sachs* and the case at bar as discussed in opinions in both State and Federal Courts.

The case of *Mitchell* v. *Board of Governors of Washington State Bar Ass'n* (1944), 145 F. 2d 827, cert. denied 65 S. Ct. 677, was an action by appellant who was disbarred from the practice of law as an attorney at law by an order of the District Court. He subsequently filed a petition for reinstatement as such attorney in that court. The Board of Governors of the Washington State Bar Association intervened and answered, to which the petitioner replied. Hearing was had and on September 26, 1942, the petition was dismissed. No appeal was taken therefrom.

On September 1, 1943, after the time for appeal from the order of dismissal, appellant filed in the same proceeding a purported amended petition in which he seeks to reopen the

proceedings and again joined the Board of Governors as respondents.

The District Court entertained the amended petition and an amendment thereto, although it was without jurisdiction thereof, and entered an order of dismissal thereof, from which dismissal this appeal was timely taken. The court held that since the District Court was without jurisdiction, judgment was affirmed.

On petition for rehearing petitioner contended that the order of dismissal of September 26, 1942, on appellant's proceeding for reinstatement was not a final order ending that proceeding because it was without prejudice. He further argues that proceedings remained open for the filing thereon of a subsequent petition and the court held that he was in error, stating:

"* * * A proceeding is nonetheless terminated because it is dismissed without prejudice."

and denied petition for rehearing.

The Supreme Court of the United States, in *Costello* v. *U.S.* 365 U.S. 265 (1961), in speaking about dismissals operating as a termination of cases on the merits when it dealt with involuntary dismissal under Federal Rule 41(b) which is the same Rule we are concerned with in the case at bar, had this to say:

"We do not discern in Rule 41(b) a purpose to change this common-law principle with respect to dismissals in which the merits could not be reached for *failure of the plaintiff to satisfy a precondition.* All of the dismissals enumerated in Rule 41(b) which operate as adjudications of the merits—*failure of the plaintiff to prosecute,* or to comply with the Rules of Civil Procedure, *or to comply with an order of the Court,* or to present evidence showing a right to the relief on the facts and the law—*primarily involve situations in which the defendant must incur the inconvenience of preparing to meet the merits* because there is no initial bar to the Courts reaching them." (Our emphasis.)

■ Cases bearing the deficiencies which necessitate dismissal by the trial court are to be considered adjudicated on the merits unless *otherwise specified.*

We are now confronted with the determination of just what is a dismissal without prejudice *otherwise specified* so that it is not a determination of the merits of the case. On this point, in *American National Bank* v. *U.S.*, 142 Fed. 2d 571 *(1944)*, the court said:

"* * * But under Rule 41(b) a dismissal on defendants motion, and likewise a dismissal not provided for in the Rules, 'operates as an adjudication upon the merits' unless otherwise specified in the order."

On the date and hour set for argument on the pleadings, et cetera, defendants-appellants failed to appear and the court dismissed the cause without prejudice, which appears to this court that Judge Steckler was attempting to give defendants-appellants their day in court, which was very fair. However, defendants-appellants' argument that Federal Rule 41 (b) applies and there was no final judgment in the Federal Court is untenable for the reason that this case does not come within the exception, as it was not dismissed for lack of jurisdiction. It was dismissed for lack of prosecution.

Federal Rule 41(b) Involuntary Dismissal: Effect Thereof, applies where the plaintiff or party having the burden of proof upon an issue has completed the prosecution of his case and a motion to dismiss is filed by his adversary. In other words, it is similar to the State Court's motion for a directed verdict at the close of the evidence in a jury trial or a motion for judgment on the evidence at the close of plaintiff's evidence. The last sentence of Rule 41(b) reads as follows:

"Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, *other than a dismissal for lack of jurisdiction or for improper venue,* operates as an adjudication upon the merits." (Our emphasis.)

See, Civil Code Study Commission, Indiana Practice Rules of Procedure Annotated, page 21-Rule 41 (b).

The first case filed by defendants-appellants in the United States District Court was dismissed without prejudice for lack of prosecution by them, in that their attorney failed to comply with the rule of court and was a final judgment under the exception set out in Rule 41 (b).

Defendants-appellants contend that appellee Lewis' argument on his motion to dismiss in the case at bar contended that the fact that defendants-appellants had previously been defaulted precluded defendants-appellants from raising the defense that appellee Lewis had not yet obtained a decision in his favor. This contention is not well taken and is not the law. Defendants-appellants were defaulted because they did not appear in person or by attorney in the prosecution and furtherance of their lawsuit, as ordered by Judge Steckler. The civil proceedings in the United States District Court were determined in favor of appellee Lewis, which determination or judgment of dismissal in fact established that the allegations of defendants-appellants' complaint were made against appellee Lewis and his co-defendants.

In the case of *Commercial Credit Corp.* v. *Ensley* (1970), 148 Ind. App. 151, 264 N. E. 2d 80, Judge Hoffman of this court discussed the matter of determining the time when there is a favorable termination of persons against whom civil proceedings are brought and this is a necessary element before a person can bring a suit in malicious prosecution. Clause (b) of 3 Restatement of Torts, § 674, reads as follows:

"Civil proceedings may be terminated in favor of the person against whom they are brought under the rule stated in Clause (b), (1) by the favorable adjudication of the claim by a competent tribunal, or (2) by the withdrawal of the proceedings by the person bringing them, or (3) *by the dismissal of the proceedings because of his failure to prosecute them.* A favorable adjudication may be by a judgment rendered by a court after trial or upon demurrer *or its equivalent.* In either case

the adjudication is a sufficient termination of the proceedings, unless an appeal is taken. If an appeal is taken, the proceedings are not terminated until the final disposition of the appeal and of such further proceedings as it may entail." (Our emphasis.)

There is nothing in the record to indicate that an appeal was taken or attempted to be taken from the first suit in the United States District Court in which the dismissal was granted.

And further, the defendants-appellants had no right to complain that there was no final determination of the first case filed in the United States District Court when they had a right to file a petition to reinstate the cause or file a new cause of action, which they did in the United States District Court, but did so one year and five months after the judgment of dismissal had been entered against them.

Defendants-appellants were guilty of laches in waiting that period of time in which to reopen the case or file a new one, as the same was not done within a reasonable time.

In the case of *State of Indiana, on the Relation of Dennis Healey, Relator* v. *DeKalb Circuit Court, Warren G. Sunday, Special Judge, Respondent* (1971), 257 Ind. 53, 272 N. E. 2d 310, in which the opinion was handed down as late as August 23, 1971, the court discussed the matter of laches on the part of the relator, who had waited nine months to file his motion to dismiss, attacking the jurisdiction of the DeKalb Circuit Court over his case. During the nine months period from the filing of the criminal charges to the filing of the motion to dismiss, the relator took the following actions: (1) filed motion for change of venue from the judge; (2) filed motion to quash the affidavit; (3) filed motion for production of names of State's witnesses and to take discovery deposition of a State witness; (4) entered a plea of not guilty. In addition, during the nine months the trial court had set the case for trial.

The court next discussed the case of *State* v. *Dubois Circuit Court* (1968), 234 N. E. 2d 859, wherein that court held that twenty months delay in filing a petition to reinstate a cause after dismissal was an unreasonable delay in challenging that dismissal and barred review in this court by way of an original action of an adverse ruling on the petition to reinstate. The Supreme Court further quoted from the case of *State ex rel. Nineteenth Hole, Inc.* v. *Marion Superior Court* (1963), 243 Ind. 604, 189 N. E. 2d 421, wherein that court held that a forty-two day delay in filing a petition for an extraordinary writ challenging the appointment of a receiver without notice, constituted laches under the circumstances, and barred a remedy by original action.

The court further discussed and quoted from the case of *State ex rel. Gibson General Hospital* v. *Warrick Circuit Court* (1966), 247 Ind. 240, 214 N. E. 2d 655, which case was one wherein that court held that a relator had filed a pre-trial motion to dismiss in the trial court for lack of jurisdiction two years after the commencement of the suit. There, during that two year period the relator had filed several motions, including motions for change of venue from the county, change of judge and a demurrer, and the court therein said "The relator submitted to the jurisdiction of the lower court for a period of a year and a half, during which time it took several actions of a dilatory nature. It was only when it had exhausted other possibilities short of going to trial, that the relator sought relief in this court."

The court, in deciding the case of *Healey* v. *DeKalb Circuit Court, supra,* determined that the relator had been guilty of laches and was not entitled to any relief.

In *State* v. *Dubois Circuit Court, supra,* our Supreme Court, in memorandum on petition for rehearing, quoted from 12 I.L.E. *Equity* § 51, page 299:

" 'Laches, in a general sense, is neglect, for an unreasonable and unexplained length of time, under circumstances

permitting diligence, to do what in law should have been done. More specifically, it is inexcusable delay in asserting a right; an implied waiver arising from knowledge of existing conditions and an acquiescence in them; such neglect to assert a right, as taken in conjunction with lapse of time more or less great and other circumstances causing prejudice to an adverse party.'

"This doctrine is properly based upon the grounds of public policy."

See, also, *Wilbur Eustes Davis, Jr.* v. *Stephen Frank Thied,* (1965), 138 Ind. App. 537, 203 N. E. 2d 835.

A failure of a party to plead when ordered by the court is a waiver of his right to plead further.

In *Rooker* v. *Bruce* (1908), 171 Ind. 86, 85 N. E. 351, the plaintiff filed his complaint on a promissory note executed by the defendant. On October 11th defendant was ruled to answer, and, failing to do so, on October 28th the court made an order requiring the rule to answer be discharged on or before November 18, 1905. No answer having been filed on November 18, 1905, judgment was rendered as upon default.

Two days later the defendant filed a motion to vacate and set aside the judgment, which motion was sustained. Subsequently, more pleadings were filed after which defendant was ruled to answer the complaint on or before March 30, 1907. The defendant failed to answer and on April 4, 1907, judgment as upon default was rendered in favor of plaintiff. On May 2, 1907, defendant filed a motion to set aside the default and vacate the judgment, together with other pleadings. The motion was overruled by the court, an appeal taken and one of the specifications of error was the overruling of defendant's motion to set aside the default and vacate the judgment. Our Supreme Court said:

"Furthermore, final judgment was rendered in this case as upon default, the demand was taken as confessed, and there was no trial in the true acceptation of that term. In such a case it has been expressly held that relief from

the judgment cannot be obtained by an ordinary motion for a new trial. [Citing cases.]

\* \* \*

"The dispatch of business by courts would be impossible, and intolerable delays would result, without some rules governing the practice, and designed to expedite the transaction of business. *In the absence of statute, courts of record have inherent power to make and enforce reasonable rules for the regulation of their business.* \* \* \* *Circuit courts are expressly authorized and directed to adopt rules for conducting the business therein not repugnant to the laws of this State.* \* \* \*" (Our emphasis.)

The court affirmed the judgment by stating:

"\* \* \* It is accordingly our conclusion that neither the statutes involved, nor the procedure followed in this case, denied appellant due process of law, or invaded his constitutional rights."

Considering the above authorities, and the further fact that defendants-appellants waited 22 months to re-file their suit in the Federal Court, we are of the opinion that the dismissal entered by Judge Steckler against the defendants-appellants herein in their action against appellee Lewis and others was a favorable termination of said cause of action as to appellee Lewis and his co-defendants.

We are of the further opinion that defendants-appellants' argument in the case at bar that this case should have been dismissed because appellee Lewis had not yet attained a decision in his favor is untenable and that the judgment on dismissal without prejudice in the Federal Court because of the failure of defendants-appellants' attorney to appear on the day and hour assigned for argument was and is a final judgment.

The second point hereunder is:

B. *Damages Awarded Appellee Lewis Were Excessive*

This specification of error contains and includes as being contrary to law the two following specifications, namely:

(1) The evidence was insufficient to sustain the verdict, and

(2) Excessive liquidated and punitive damages were recovered by the appellee Lewis.

We shall treat these specifications together. Defendants-appellants contend that the award of the jury of $15,000 compensatory damages plus $75,000 punitive damages was excessive. They also complain about the jury awarding the full amount of the prayer for relief. There is no merit in the argument that the full amount of the prayer was awarded. It is further argued that it is not shown that appellee Lewis sustained any economic loss, either directly or indirectly, as a result of the suit filed by the defendants-appellants in Federal Court. The record shows that he owed an attorney fee of $3,500 in that cause which he expected to pay. Appellants' argument that Lewis had not paid his attorney's fee is of no merit. He has obligated himself to pay that amount and the same is a damage to him, whether paid or whether it is yet to be paid.

Appellee Lewis contends that the defendants-appellants did not save their right to be heard on this objection inasmuch as they did not properly set out the specification in that it was set out under the specification of insufficient evidence.

With appellee's contention we cannot agree. The Supreme Court Rules, effective January 1, 1970, include excessive damages as a ground for new trial. 1970 Rules—Trial Rule 59 (A) (3) reads: "(3) excessive or inadequate damages, amount of recovery or other relief;".

Under this Rule we are of the opinion that the specification of error "Excessive liquidated and punitive damages were recovered by the plaintiff herein" was sufficient to save defendants-appellants' record.

We understand that the Judicial Study Commission, upon drafting the Rules adopted and effective January 1, 1970, intended a liberal construction of them. It is the opinion of

the writer of this opinion that the new Rules should be given a liberal construction by our courts of review, but not such a liberal construction that lawyers practicing law may infer that this court will take care of them when the case is poorly tried in the trial court and when the Appellate Rules are not adhered to. These Rules are not a license for lawyers to have their work done for them by courts of appeal.

After carefully reviewing the evidence as set out in the briefs and a part of that in the transcript, we are of the opinion that it is appellants' contention that the damages were excessive and completely lacking in supporting probative evidence is not well taken and are of the opinion that the evidence was adequate and sufficient for the jury to make the award of damages which it did.

Such being the case, it was within the province of the jury to weigh the evidence and determine the amount of damages and this court is precluded from weighing the evidence, as that was solely within the jury's province.

The rule that this court will not weigh the evidence is so well established that it needs no citation of authority.

Defendants-appellants' contention that Lewis' reputation was not injured as a lawyer and a judge by the defendants-appellants' suit in Federal Court and that he was not damaged thereby due to the fact that he ran unopposed and was re-elected to a second term as Superior Court Judge in the last election is pure conjecture. We have no record and no way of knowing why appellee Lewis was unopposed for re-election, but this court, having the right to take into consideration the things ordinarily known in the facts of life and men, knows that up to and including the last general election many counties in Indiana have had difficulty in securing a competent attorney, especially in small counties, who will give up a lucrative law practice to serve as judge. Such may have been the situation in Hancock County, or there could have been many other reasons which are not in the evidence. Defendants-appellants cite in their behalf on

this point the case of *Dwyer* v. *McClean* (1962), 133 Ind. App. 454, which is a case for malicious prosecution, but unlike the case at bar, it was for a crime charged. There is no distinction in the elements required to prove a case of malicious prosecution under civil or criminal cases.

In the *Dwyer* case the appellant contended that the verdict of the jury in awarding damages of $13,700 was excessive.

In the *Dwyer* case the court further said:

"In an action for malicious prosecution the plaintiff may recover all damages which are the natural probable consequences of the malicious prosecution complained of. The plaintiff, if entitled to damages, may thus recover as compensatory damages the pecuniary loss which results directly from such prosecution. He may also recover as exemplary and punitive damages for the non-pecuniary losses if any have been sustained. Within this second class of damages are included the injuries to the plaintiff's reputation, since an accusation of a crime made under the pretense of bringing a person guilty of such crime before the bar of justice is made in an imposing and impressive manner and the reputation of the party so accused may have inflicted upon it a deeper and longer lasting injury than would be inflicted thereon if the same charges were uttered under other circumstances. Consideration can also be given in awarding such damages to the humiliation, embarrassment, mental suffering, physical pain, discomfort and inconveience caused by such prosecution if the same are shown to be the direct and proximate results of the defendant's action. * * *"

The court, further, in speaking of setting aside the verdict on the grounds of excessiveness, stated that the rule in Indiana is as follows:

" 'Courts seldom disturb verdicts on the ground that compensation for an injury to character has been estimated by too high a standard. In cases of this character a new trial will not be granted on the ground of excessive damages, unless they are so outrageous as to induce the belief that the jury acted from prejudice, partiality or corruption. *Guard* v. *Risk*, 11 Ind. 156; *Alexander* v. *Thomas*, 25 Ind. 268; *Crocker* v. *Hadley*, 102 Ind. 416.

" 'An action for malicious prosecution, like actions for libel or slander, involves the question of compensation for an injury to character. We can not disturb the verdict on that ground.' *The Evansville and Terre Haute Railroad Company et al.* v. *Talbot* (1891), 131 Ind. 221, 223, 29 N. E. 1134."

In the *Dwyer* case, the appellant argued further that the appellee showed pecuniary damages in the total amount of $375 and that therefore, under the case of *Bangert* v. *Hubbard* (1957), 127 Ind. App. 579, 126 N. E. 2d 778, the award of the jury was so disproportionate to the actual or compensatory damages allowed that such must be reversed. The court, speaking further, said:

"* * * And well such might have been true in the *Bangert* case, *supra,* since:
" 'There was no evidence of loss of earnings or that his standing with his employer was affected in any particular. Neither was there evidence that his social standing was affected; that he suffered loss of reputation or humiliation, embarrassment or suffering either mental or physical as the result of the charge of blackmail having been filed.' "

The court held in the *Dwyer* case that the situation there presented a different cause and that there was shown his standing with his employer was affected, as was his social standing and he further suffered humiliation and loss of reputation.

The court, speaking further, said, at page 460:

"The elements which the jury or the trial court may consider in assessing the amount of punitive damages do not admit of any strict and specific proof, and we can foresee situations in criminal prosecutions where if the punitive damages were to be tied to such a proportionate rule grave injustices would be done. The measure of a man's character and reputation can hardly be measured by the amount of money he may have been required to expend in defending himself against such criminal action. * * *"

Further, in the *Dwyer* case, the court stated that the question of whether there was probable cause existing under a

given statement of facts is not a question of fact for the jury, but is a question of law for the court, and further said:

" 'In the abstract, probable cause is a pure question of law, but its existence in a given case is a mixed question of law and fact, when one or more of the elementary facts thereof, relied upon, is controverted; in such case, the court must hypothetically state to the jury the material facts which the evidence tends to prove, and positively direct, as to the law, on the assumed state of facts. Where the facts are uncontroverted, the court must determine the existence or nonexistence of probable cause. *Hutchinson* v. *Wenzel, supra,* 54, and cases cited.' *Indianapolis Traction, etc., Co.* v. *Henby* (1912), 178 Ind. 239, 248, 97 N. E. 313."

The judgment in the *Dwyer* case was affirmed. See: 243 Ind. 108, 183 N. E. 2d 204.

Judge Landis, writing a concurring opinion on denial of transfer to the Supreme Court in the *Dwyer* case, said:

"The Appellate Court in the previous case of *Bangert* v. *Hubbard, supra,* reversed a judgment for malicious prosecution rendered on a jury's verdict of $10,500, and stated at p. 589 of 127 Ind. App., p. 783 of 126 N. E. 2d, and p. 404 of 67 A. L. R. 2d:

'. . . we believe it to be sound reasoning that the amount of punitive damages awarded by a jury must bear some reasonable proportion to the amount of compensatory damages. . . .'

"However, the Appellate Court in the case at bar states (133 Ind. App. 454, 460, 175 N. E. 2d 50, 53):

'The elements which the jury or the trial court may consider in assessing the amount of punitive damages do not admit of any strict and specific proof, and we can foresee situations in criminal prosecutions where if the punitive damages were to be tied to such a proportionate rule grave injustices would be done. The measure of a man's character and reputation can hardly be measured by the amount of money he may have been required to expend in defending himself against such criminal action. . . .'

"The Appellate Court opinion in the case at bar, in effect follows my dissent (reported in 237 Ind. 5, 143 N. E. 2d

285) to the Supreme Court's denial of transfer in *Bangert* v. *Hubbard;* and, by relying on the content of my dissenting opinion, has virtually overruled *Bangert* v. *Hubbard, supra,* so that it can no longer be considered authoritative in this jurisdiction.

"Petition to transfer denied."

In the case at bar there was no question as to probable cause, as that had been passed upon and determined in the judgment of the United States District Court, dismissing the action of defendants-appellants herein in Cause No. IP-68-C-127.

The record in the case at bar discloses the testimony of the witnesses that the lawsuit was filed and the contents of the allegations became common knowledge in Greenfield, Indiana, and its surroundings, which was the appellee's home county, which resulted in unfavorable remarks being made and questions being raised which put in question appellee's character and reputation. He was accused by appellant Snider of being "crooked." Radio stations promulgated the numerous accusations contained in the Federal Court complaint. Harassment included contacts with the Justice Department, the F.B.I. and defendants-appellants' attempt to obtain federal and state indictments against appellee Lewis.

Considering the evidence most favorable to the appellee, the court can infer that appellee Lewis suffered humiliation, embarrassment, mental anguish, harassment and doubts as to his honesty and integrity were raised in the minds of many people in his community who never before had had any doubt.

Appellee Lewis, by counsel, stated for the record that he never contended in the case at bar that he had lost income. The court takes judicial notice of the fact that he was a Superior Court judge at that time, and was on salary, and that his salary is paid unless he is removed from or resigns the office.

Although physical pain is an element to be considered in damages in malicious prosecution cases, defendants-appellants

contend that appellee suffered no physical pain and this is of no merit, as the evidence does show the other elements and physical pain is only an element which may be considered and is not a mandatory element.

In the *Dwyer* case, *supra*, the plaintiff was awarded $375 as pecuniary damages and the additional sum of $13,700 punitive damages, which damages the court held were not excessive. Comparing the case at bar to the *Dwyer* case and especially the concurring opinion of Judge Landis, *supra*, and considering the value of the dollar and the economic condition of the early 1960s as compared to the present day economy, the award to appellee Lewis of $15,000 pecuniary damages and $75,000 punitive damages cannot be held to be excessive.

In the trial of the cause the trial judge permitted evidence to go into the record of the financial standing of defendants for it to be considered by the jury in making up its verdict. The authority for the rule to permit such evidence to go to the jury is set out in *Sexson* v. *Hoover* (1891), 1 Ind. App. 65, 27 N. E. 105. In *Sexson*, objection was raised by the defendant during the trial to the permitting of plaintiff to go into defendant's wealth. Nevertheless, the court permitted the evidence of defendant's worth to go to the jury. The Supreme Court, in speaking on this matter of evidence and damages, said:

> "Suits for malicious prosecution, in so far as the measure of damages is concerned, are closely analogous in principle to suits for seduction and slander, and in the latter classes of cases proof of the defendant's financial standing has been held competent in the following cases: [Citing cases]
> * * *
> "The damages were assessed by the jury at $400, and considering the circumstances of the case, and the fact that the jury was not limited to mere compensation for the injury, we do not deem the assessment excessive."

One of defendants alone testified to financial worth amounting to (a) a checking account containing $58,000

(which he referred to as enough to take care of the average family) (b) $200,000 in United States Treasury bills (c) $42,000 in United States Treasury bonds (d) a 1969 income, from interest alone, of $44,754.35, all in addition to his real estate holdings. There was further evidence as to the worth of other defendants-appellants.

In our opinion, such evidence as was given as to the worth of the defendants herein, including that as above set out, is sufficient to show that the damages awarded were not so outrageous as to cause the belief the jury had acted from prejudice, partiality or corruption.

As the court said in *Sexson* v. *Hoover, supra:*

"* * * While, upon the other hand, it is held by many courts that this kind of evidence is admissible only in cases where punitive damages may be assessed, and upon the theory that the imposition of a pecuniary penalty against one of limited means might be oppressive, while if the same amount was assessed against one possessed of large wealth it would be but lightly felt, and the stern vengeance of the law would be practically lost. *So the jury should be advised of the condition of the fleece borne by the lamb, and temper the wind accordingly.*" (Our emphasis.)

In the case of *Evansville and Terre Haute Railroad Company et al.* v. *Talbot, supra,* the court held that an action for malicious prosecution was like actions for libel and slander and involves a question of compensation for injury to character. We cannot disturb the verdict on that ground.

Defendants-appellants strongly assert that if the cause is not reversed upon the errors argued in their brief, then a remittitur should be ordered in the case to more truly reflect the actual damages, if any there were, suffered by appellee Lewis.

The jury and trial judge saw, observed, and heard the witnesses. No motion for remittitur was filed in the trial court. The trial judge acts as a thirteenth juror when necessary to see that there has not been a miscarriage of justice

and can grant a new trial if he feels the verdict is erroneous, or he may grant a remittitur if he feels the damages are excessive. He did neither, and it does not appear under the law and evidence that the damages awarded were so grossly and outrageously excessive as to induce the belief that the jury had acted from prejudice, partiality or corruption, and relief prayed for by way of remittitur should be denied.

Appellee Lewis in his brief contends that the specification that the verdict was not sustained by sufficient evidence on all necessary elements and was contrary to the evidence is wholly insufficient to question the amount of damages awarded. He cites *Indianapolis Transit, Inc.* v. *Moorman* (1963), 134 Ind. App. 572, 189 N. E. 2d 111, which says:

> "We find the law to be well settled that the question of amount of damages may not be raised on the grounds that the finding or verdict is not sustained by sufficient evidence or is contrary to law. *State Life Insurance Company* v. *Sare* (1938), 215 Ind. 68, 17 N. E. 2d 100; * * *"

*Nunemaker* v. *Glassburn* (1965), 137 Ind. App. 655, 210 N. E. 2d 668, which was, of course, before the new Rules, was a case wherein the only specification of error was overruling the motion for new trial and which motion alleged (1) the damages awarded by the court were excessive and (2) and (3) being the finding of the court was not sustained by sufficient evidence and was contrary to law. The court in that case held that none of the specifications met the requirements of Rule 2-6 of the Supreme Court of Indiana and no proper error was ever presented to the trial court on motion for new trial.

In the 1970 Rules, under Trial Rule 59—Motion to Correct Errors; (A) Motion to correct errors—When granted, (3) excessive or inadequate liquidated damages, amount of recovery or other relief; we are resolving any doubt in favor of the defendants-appellants and accepting their statement on the excessive damages under the new Rules in view of the liberal construction intended for them.

Plaintiff-appellee contends that defendants-appellants waived their right, if any, to question the amount of damages awarded by failing to tender an instruction on damages or to object to the trial court's Final Instruction No. 20, which reads as follows, to-wit:

"Court's Final Instruction No. 20

"In this case, the plaintiff asks for both actual and exemplary or punitive damages.

"By actual damages is meant damages in payment or satisfaction for an injury suffered.

"If, under the evidence and these instructions, you find the plaintiff entitled to recover damages from the defendants, then you should allow him such fair and reasonable sum as will compensate him for such, if any, physical and mental anguish, humiliation, embarrassment and public disgrace, loss to his good name and reputation, which you find to have resulted to him from this action brought against him and the publicity connected therewith, the moneys which he may have been compelled to spend on attorney fees caused by the filing of the action.

"In estimating damages for physical and mental anguish, humiliation, embarrassment, public disgrace and loss to his good name and reputation, if such you find, no precise rule can be given you for the reason that such damages are not in their nature susceptible of exact money valuation, but in determining the amount of such damages, if any, you should use your own careful and deliberate judgment, guided by and based upon the evidence and allow the plaintiff such an amount as will in your candid, impartial and well considered judgment fairly and reasonably compensate him for such injuries or damages.

"You are further instructed that if you find for the plaintiff and allow him actual damages, then you may allow and award exemplary damages, not as compensation, but by way of punishment to restrain the defendants and others from the commission of like acts in the future. In determining the amount of exemplary damages, if any, to be awarded the plaintiff, the Court can give you no exact rule, but you should be guided by your careful, well considered judgment and allow, if any, such amount and such only as you shall find the plaintiff entitled to receive in addition to his actual damages under all the facts and circumstances as shown by the evidence and under these instructions."

Said Instruction is a correct statement of the law covering actual and pecuniary damages and the defendants-appellants at the trial agreed that it was the law and filed no written objections thereto and there is no record that they dictated any objections to the reporter. Appellee Lewis cites as authority Indiana Rules, 1970, Trial Rule 51, Instructions to Jury: Objections, Requests: Submission in Stages, (c) Objections and requested instructions before submission.

Counsel for defendants-appellants found himself in an embarrassing position. He could not in good faith make objection to an instruction he knew was correct. He waived any error on his failure to object to the giving of the instruction at the proper time.

The next specification is:

C. *The Trial Court Erred in Refusing to Permit the Defendants to Defend Said Cause Upon the Merits.*

This contention is under the claimed error that the decision was contrary to law as outlined in specification of error number 4 of the motion to correct errors, in that:

"4. Denial of a fair trial by irregularities because of accident and surprise which ordinary procedures could not have guarded against. * * *"

Defendants-appellants contend that they did not know a judgment would be taken against them after they filed their answer and as a result thereof they would be denied the opportunity to defend this cause upon its merits.

This is followed by a dissertation of the filing of appellee Lewis' suit in the Hancock Circuit Court, special appearance of counsel for the defendants-appellants, disqualification of Judge Davis and the naming of a panel from which the Honorable Carl T. Smith, Judge of the Madison Circuit Court, was selected and accepted and qualified and assumed jurisdiction in the cause.

Special Judge Smith ruled defendants to answer, which was

extended to March 4, 1969. On March 7, 1969, the attorney for defendants-appellants mailed the Clerk of the Hancock Circuit Court their answer, demand for jury and motion for change of venue from Hancock County. The pleadings were received in the Clerk's office on the morning of March 10, 1969, and addressed and mailed to Judge Smith at Anderson, Indiana; that Judge Smith, without this information, entered default judgment March 10, 1969, and the Clerk did not know he was in Hancock County on that date.

Defendants-appellants in their brief mention "the peculiar procedure of the Hancock Circuit Court, requiring the Clerk to mail the Special Judge's pleadings before file marking the same." Further, they say there was confusion created which resulted in defendants-appellants being defaulted. Confusion claimed by defendants-appellants, if any, was created by defendants-appellants themselves, for failure to comply with the rule of the Hancock Circuit Court, as above set out. The plaintiff-appellee had nothing to do with the filing of the pleadings on March 10 and did not ask for a default judgment, but the same was granted by the Special Judge on his own motion on March 10th after he had ruled defendants-appellants to answer by March 4th, *or be defaulted*. They did not file on or before the day ordered, nor had they filed on March 10th and were, of course, subject to be defaulted, as they were. The law on this point is so well settled it needs no citation of authority and for the further reasons assigned in *Rooker* v. *Bruce, supra,* and *Davis* v. *Thiede, supra.* We find no merit in defendants-appellants' charge of accident and surprise.

This default was entered on March 10, 1969, and there was no rule of the Supreme Court in the 1967 edition concerning local court rules. Rules on local courts became effective January 1, 1970, Trial Rule 81—Local Court Rules, and at the same time, Trial Rule 5—Service and Filing of Pleading and Other Papers, as set out under subparagraphs D and E.

Defendants-appellants having admitted in their brief that

there was a local rule of the Hancock Circuit Court, they certainly had to be familiar with that Rule and if not their lack of knowledge is insufficient excuse for their non-compliance and does not now give them the right to ignore the rule and its consequences.[1] In the oral argument of this cause attorney Eisele was interrogated as to his knowledge of the Hancock Circuit Court local rules and to which interrogation he said that, although he practiced law in Madison County, he was frequently in the courts of Hancock County and was familiar with and abided by the local rules of the Hancock Circuit Court.

Many older cases hold that a pleading was filed when left in the custody of the Clerk and that it was not necessary that the file mark of the Clerk be affixed thereto before it was filed.

The Clerk of the Hancock Circuit Court knew of the local court rule and upon her receiving the mail found the pleadings and letter therein with the salutation addressed to the Hancock Circuit Court, Attention: Special Judge Carl T. Smith, which letter reads as follows, to-wit:

"March 7, 1969

"Hancock Circuit Court
County Court House
Greenfield, Indiana
Attention: Special Judge
            Carl T. Smith
                     Re: George Lewis vs. Carl Snider, et al,
                         Cause No.: 34136
Dear Judge:

    We enclose herewith the defendants' answer, jury demand and motion for change of venue from this county for filing

---

1. Under Trial Rule 5, Subsection (E) requires (1) delivering the pleadings or papers to the clerk of the court; (2) mailing the papers to the clerk by registered or certified mail return receipt requested; or (3) if the court so permits, filing the papers with the judge, in which event he shall note thereon the filing date and forthwith transmit them to the office of the clerk. This is evidence that the Supreme Court realized the necessity of getting pleadings in the hands of judges and special judges so they could be properly file marked and the record made in the cause in which they were filed. The three pleadings filed were in the year 1969 and, therefore, the rule of the Hancock Circuit Court prevailed as to the filing of the pleadings with special judges.

in the above cause number. We would appreciate receiving file marked copies in the enclosed self addressed envelope. Thank you.

Very truly yours,

YARLING, WINTER, TUNNELL & LAMB
Donald L. Tunnell"

The record is silent as to the address on the envelope and we assume the envelope, if opened, was disposed of in the wastebasket in the usual course of the Clerk's duties. The Clerk, in compliance with the local rule, within an hour after receiving them, placed the pleadings in a mailing roller stamped with United States government postage and addressed and mailed it to Special Judge Smith and deposited it in the United States mailbox depository located outside the Court House without a file mark stamp thereon. The Postmaster's affidavit was that the delivery had to take place before the hour of 10:00 o'clock A.M. All this was done in compliance with the local court's rule so that it could be in the hands of the Special Judge in order that he would personally know the pleadings had been filed and could place the Clerk's file mark thereon when he came to the Hancock Circuit Court to make the record in the cause and would have full knowledge of the status of his case.

In our opinion, no pleadings were filed in the cause in the Hancock Circuit Court on March 10, 1969. It is true the pleadings passed through the Clerk's office but she immediately refused to take custody of them and it is the Clerk's duty to have the care and custody of all the Court's records. I.L.E. Vol. 5, p. 182 § 2 *Powers and Duties* [of Clerks]. For the law to be otherwise would result in utter confusion to the Clerk, court and lawyers.

Later defendants-appellants filed motion to vacate and set aside the default judgment and grant change of venue, to which motion to vacate and set aside the judgment the appellee Lewis filed a demurrer, argument on which was later heard by Judge Smith and his finding taken under advisement.

Thereafter, on August 25, 1969, Judge Smith made the following record:

"The Court finds the defendants forwarded to the Clerk of this court and the Clerk of said county received for filing March 10, 1969, the following: Answer of Defendants in Two Paragraphs, Motion for Change of Venue from County, Henry, Rush, Shelby, Marion, Hamilton and Madison Counties are now named to a panel from which to strike. The parties are ordered to proceed with the striking according to law."

It must be noted here that Special Judge Smith in said finding found that *the Clerk received for filing March 10, 1969* the following * * * and ordered the parties to proceed with the striking. We fail to find any record of Special Judge Smith where he affixed the file mark of the Hancock Circuit Court showing the date of the actual filing of these three pleadings. A photostat of the pleadings is in the transcript and shows only the file mark of the Shelby Circuit Court, on September 11, 1969, which is, presumably, the date they were received in the Clerk's office in Shelby County.

This record of August 25, 1969, is, in our opinion, further evidence that Special Judge Smith had full and complete knowledge of the Hancock Circuit Court's rule on what constitutes a filing and of the Hancock Circuit Court rule of filings with special judges. He did not enter a *nunc pro tunc* entry showing the filing as of March 10, 1969. Although he had heard argument on the motion to vacate the judgment and had taken the matter under advisement, apparently he did not consider that he had jurisdiction to rule thereon and his only ruling was on the motion for change of venue, which he knew was properly filed by him after he received the pleadings on March 11, 1969, and that the motion for change of venue was all that he had jurisdiction to pass upon.

The pleadings were all before the court and were acted upon by Special Judge Smith and by Judge Barger in the

Shelby Circuit Court without protest or objection from any party or parties to these proceedings and we now hold there was no error in not showing by the record and by a file mark of the Clerk being affixed to the pleadings the date they were filed in the Hancock Circuit Court by Judge Smith after he had received them at his office on March 11, 1969.

There is no merit in defendants-appellants' contention that Special Judge Smith's jurisdiction was cut off after the motion for change of venue was received by the Clerk of the Hancock Circuit Court as the same was never filed, but only passed through her hands and out of her custody and control and did not become a part of the record of the court until the record was made by Judge Smith.

Defendants-appellants contend the motion for default should have been set aside as it was a mistake of the Clerk that allowed the default to be taken. For the reasons hereinabove set forth we reiterate it was not the Clerk's fault, but the fault of counsel; the Clerk followed the rules and counsel did not. It was counsel's responsibility to protect their record and not the responsibility of the Clerk, but it was her responsibility to obey the rules of the court and take custody and care of all papers and pleadings when legally filed.

Defendants-appellants contend that Judge Barger erred in sustaining appellee Lewis' demurrer to their motion to set aside and vacate the judgment, which he did on December 30, 1969, and after which the defendants wholly failed to amend or plead over, and they cite Ind. Ann. Stat. § 2-1068 (Burns 1967 Replacement).

Ind. Ann. Stat. § 2-1068 (Burns 1967 Replacement) reads, in part, as follows:

"The court shall relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect, on complaint filed and notice issued, * * *"

Plaintiff-appellee, in answer thereto, cites Ind. Ann. Stat. § 2-1102 (Burns 1967 Replacement) :

> "2-1102—Judgment on failure to plead—Extension of time. —If, from any cause, either party shall fail to plead or make up the issues within the time prescribed, the court shall forthwith enter judgment as upon default, unless for good cause shown, further time be given for pleading, on the payment of the costs occasioned by the delay."

Plaintiff-appellee contends that the motion to vacate and set aside the default reveals critical deficiencies, in that (1) There is no allegation or contention that the judgment was taken through the defendants' mistake, inadvertence, surprise or excusable neglect; (2) There is no allegation or contention that the defendants had a good and meritorious defense to the cause of action upon which the judgment was based; (3) Defendants wholly fail to recognize that they were in default, pursuant to order of the court, for a period of six days prior to the entry of default; (4) Defendants make no contention that they were not completely and fully aware of the court's entry of February 4, 1969, ruling them to plead "or be defaulted" on or before March 4, 1969; and (5) Defendants made no effort to seek an extension of time of the March 4, 1969, rule to answer or be defaulted date.

The above mentioned statutes were repealed and superceded by the Supreme Court Rules of January 1, 1970. Trial Rule 55—Default, is very much the same as the statute and refers to Trial Rule 60, wherein the court had power to (A) correct clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission, on its own initiative or on the motion of any party and after such notice, if any, as the court orders; (B) grants the power to the court to give relief to a party or his legal representatives from a final judgment, order, default or proceeding for (1) mistake, surprise, or excusable neglect; and other reasons thereinafter set out which, in our opinion, do not apply in this cause.

The law in force at the time of the trial and of the rulings on the motion to set aside the default judgment and the 1970 Rules are so much alike we shall not deem it necessary to try to distinguish between them and further deem it unnecessary to attempt to write this opinion under the statutory law as it existed through 1969 and the Rules changing the same very little, if any, effective January 1, 1970.

The law has been well settled that a motion to set aside a judgment because of mistake, inadvertence, surprise, or excusable neglect shall give relief to a party—but as it sounds in equity the party asking relief must allege in his motion that he had a *good and meritorious defense.* Appellee contends that the motion omits the allegation of good and meritorious defense and therefore was bad as determined by the trial court for that reason, and cites *Cantwell* v. *Cantwell* (1957), 237 Ind. 168, 143 N. E. 2d 275. In that case the appellee contended that for numerous reasons it would be improper or inequitable to allow appellant to vacate the judgment in question. The court said that from an examination of appellant's motion to set aside the judgment, it is apparent that there is nowhere in such motion an allegation that the appellant has a good and meritorious defense to the cause of action upon which the judgment was based and which he seeks to set aside. The court then asked the question "What is the materiality of this omission?" The appellant did not predicate his motion to set aside default on the statutory remedy prescribing relief for default judgments taken through mistake, surprise or excusable neglect. He conceded he had been appealing to the inherent and discretionary powers of the trial court to set aside a judgment which he alleged was taken against him without proper notice. Appellant's right to set aside the judgment must rest, if it is to prevail, on equitable principles. The court, speaking further, said:

"This court has similarly held that under the surprise and excusable neglect statute, a motion or complaint to

set aside a judgment will not be entertained, unless among other things, the party seeking to set aside the judgment alleges that he has a meritorious defense thereto. [Citing numerous cases, including *Rooker* v. *Bruce, supra.*]

"The rule requiring a meritorious defense to be shown before a judgment will be set aside, in a proceeding such as the one before us, is a reasonable condition interposed by courts of equity. This is not unreasonable to a defendant, for under the authorities the only showing such defendant need make to invoke the aid of equity in this respect is to indicate he has a prima facie meritorious defense to the judgment he seeks to set aside. This condition preliminary to equity's taking jurisdiction is premised upon the ground that equity will not interfere with a judgment recovered at law, unless such judgment is unjust or unconscionable. There is a maxim that courts of equity will not do or require the doing of a vain or useless thing, yet there is nothing more useless or vain than the setting aside of a judgment although no defense to it exists. Defendant's action to set aside the judgment without any claim of merit to his defense is accordingly only a moot proceeding as far as equity is concerned. Equity is also desirous of preventing circuity of action, and this purpose is served by equity's refusal to upset a judgment when the defendant petitioner has set forth nothing to indicate that if the cause were tried again on the merits a different result would be reached. The indisposition of courts of equity to set aside judgments for no reason was succinctly stated in *Meyer* v. *Wilson* (1906) *supra,* 166 Ind. 651, at page 658, 76 N. E. 748, at page 750:

"'. . . And if a party can say nothing against the justice of a judgment, can give no reason why in equity he ought not to pay it, a court of equity will not interfere, . . .'

"As appellant's motion to set aside judgment was insufficient, in view of its failure to allege appellant had a good and meritorious defense to the cause of action upon which the judgment was based, it is accordingly our conclusion that the lower court's action in overruling the motion to set aside judgment was not error."

In *Strickland* v. *O'Rear* (1962), 134 Ind. App. 247, 251, 176 N. E. 2d 902, this court said:

"The question as to whether or not it is essential for one seeking to set aside a default judgment to show that he

has a meritorious defense to the original action has been well settled by our courts.

"This court in the case of *Roy* v. *Scales* (1922), 77 Ind. App. 619, 133 N. E. 924, at 77 Ind. App. page 622, stated:

" 'The law does not require that courts shall do useless things. The appellant either did, or did not have a defense to appellee's cause of action. If he had no defense thereto— if he had been guilty of doing the wrongful act complained of whereby appellee had sustained damage—then appellee would upon another trial be entitled to the relief granted in the trial already had, and such second trial would avail nothing. Hence we have the rule that in cases of this kind the application must show that the applicant has a valid or meritorious defense to the original action, and it must state what that defense is.' "

We again reiterate that in our opinion it was defendants-appellants' inexcusable neglect that permitted the default judgment against them on March 10, 1969. It was not through surprise that they suffered the judgment, as they had not complied with the Hancock Circuit Court rules in filing the pleadings in that court. They had been ruled to answer or be defaulted by March 4, 1969, and having failed to do so cannot now claim surprise that they were defaulted on Special Judge Smith's own motion on March 10, 1969, for their failure to comply with the Hancock Circuit Court rule, which failure cannot be said to be a mistake of defendants-appellants within the rule.

Defendants-appellants could not escape the consequences of their neglect to plead by filing pleadings after the expiration of the time permitted except by consent of the plaintiff or by leave of court. *Rooker* v. *Bruce, supra.*

*Davis* v. *Thiede, supra,* stated:

"It has been expressly held that allowing the filing of pleadings *after* a rule to answer has expired is within sound discretion of the trial court.
[Citing cases.]"

The record discloses the defendants-appellants never at any time sought leave of court to file their answer, jury

motion or change of venue motion, nor did they ask consent of the plaintiff-appellee. Leave of court was never granted.

As we have said heretofore, Judge Smith's granting of the change of venue as he did is most understandable, in view of the fact that the defendants were entitled to a trial upon the issue of damages. His refusal to pass on the demurrer which had been argued before him and permitting the same to go to another county for ruling by another judge is further evidence that the pleadings were not filed as ordered and that default was legally granted.

Finding no reversible error, the judgment of the trial court is hereby in all things affirmed.

Robertson, J., concurs; Sullivan, P.J., concurs with opinion; Buchanan, J., dissents with opinion.

### CONCURRING OPINION

SULLIVAN, P. J.—While I concur in the result reached by my brothers in the primary opinion, I respectfully divorce myself from the reasoning they have adopted to reach that result. Because that opinion has refrained from dealing adequately, or in my view, properly, with two aspects of this case, which to me are vital, I feel compelled to file a separate opinion.

### LOCAL COURT RULE DID NOT PREVENT FILING OF PLEADING AND MOTIONS WHEN RECEIVED BY CLERK

Initially, I am at a loss to ascertain the merit of the Hancock County Circuit Court's local custom and practice which requires the clerk of that court to forward pleadings to a special judge without first entering them of record in the cause.

I do not speculate concerning the origin of the particular local rule in question, nor do I presume to question the willingness of special judges from other counties to inconvenience themselves and lose time from their own court business in

order to journey to a different county solely for the purpose of having papers filed.

Suffice it to say, however, that it seems preposterous to require a special judge to travel to the courthouse in another county in order to accomplish a ministerial act properly within the domain of the clerk of the court, particularly when the papers to be filed were originally in the possession of the clerk and therefore available for filing expeditiously and without delay. The rule in question achieves nothing but delay and in my view tends to bring ridicule and scorn upon the administrative practices of the Indiana judicial system.

In keeping with this view and with *Morthland* v. *Lincoln National Life Insurance Co.* (1942) 220 Ind. 692 at 702, 42 N. E. 2d 41, it is my belief that the local court rule was invalid and could not serve to effectively delay filing of the answer and motions in this case beyond the time of their receipt, i.e., March 10, 1969.

Filing of the answer of defendants, as well as their Motion for Change of Venue from the County on the same day, whether sequentially before or after entry of judgment, does not, however, avail defendants upon appeal.

## *FAILURE TO ALLEGE MERITORIOUS DEFENSE FATAL*

While it may be noted that sustaining appellee's demurrer to the petition to set aside the default judgent necessitated a narrow application of the statute involved, we are nevertheless restricted by that which the law required at the time in question. This case, having been tried prior to January 1, 1970, was governed by the old precepts of civil procedure. Under Ind. Ann. Stat. § 2-1068 (Burns 1967), the statute controlling this case, a party seeking relief from a default judgment was required to state in his application not only a valid excuse for the default, but, as well, a meritorious defense to the original cause of action. *Cantwell* v. *Cantwell* (1957) 237 Ind. 168, 143 N. E. 2d 275; *Strickland* v. *O'Rear*

(1961) 134 Ind. App. 247, 176 N. E. 2d 902. Compare *Globe Mining Co.* v. *Oak Ridge Coal Co.* (1931) 204 Ind. 11, 177 N. E. 868, wherein the court held an allegation of meritorious defense unnecessary in a proceeding to set aside a judgment entered after trial in which defendant had submitted evidence in *proof* of his defense.[1]

In the *Cantwell* case, *supra,* our Supreme Court quoted with approval from 1 *Black on Judgments* (2d ed), Sec. 376, in part as follows:

> " 'It is generally held that where a judgment at law is *void* for want of jurisdiction. . . . equity will relieve against the judgment, if it be shown that there is a meritorious defense to the action.' " (Emphasis supplied)

Generally there is no requirement for one subjected to a "void" judgment to do anything more than call the trial court's attention to the mistake with a request that the same be corrected pursuant to Trial Rule 59. See *State, ex rel. Eggers* v. *Branaman* (1932) 204 Ind. 238, 183 N. E. 653. It appears, however, that as a matter of policy, the Supreme Court of this state in *Cantwell, supra,* in requiring a party subject to a judgment void *ab initio* to allege in his motion to set aside the same that a meritorious defense exists to the original cause, has adopted a precedent which compels that party to assert matters unrelated to the erroneous judgment itself. The policy here is founded on the tenet that a new trial would be marked by unbecoming futility if no defense existed to a plaintiff's claim in the first instance. Although the rule serves to decrease the caseload and trial time of the court, it achieves this questionable efficiency by the perpetuation of an openly acknowledged error. To decide otherwise, however, would be to ignore binding precedent of our highest state court. It appears, therefore, that the showing of a

---

1. The timely filing of defendants' answer in the case before us is not "making of a defense" sufficient to obviate the necessity of an allegation of a meritorious defense in the Petition to Set Aside as treated in the *Globe Mining Co.* case.

meritorious defense is necessary to avoid the effects of a void judgment as well as of one which is merely voidable.

In the instant case, it is clear that appellants failed to set out a meritorious defense in their application to set aside the default. The application merely reiterated the virtual fiasco which took place March 4, 1969, and March 11, 1969. Clearly then, and though we might have determined otherwise, Judge Barger acted within his province by refusing to set aside the default. It is for this reason alone that I concur.

## DISSENTING OPINION

BUCHANAN, J.—I respectfully dissent from the majority decision on these grounds:

1. The local rule of the Hancock Circuit Court prohibiting the Clerk from filing pleadings received for that purpose and directing the Clerk to mail same to the Special Judge for filing and custody, is invalid because it is contrary to Indiana law.

2. The default judgment entered by the Special Judge on March 10, 1969, was *void,* and not voidable because a Motion for Change of Venue From The County was on file at the time the default was entered and the Special Judge had no jurisdiction to enter such a judgment.

*RESTATEMENT OF ESSENTIAL FACTS*—On Friday, March 7, 1969, the Indianapolis counsel of the defendants sent a letter to the Clerk of the Hancock Circuit Court with an Enclosed Answer, Request for Jury, and a Motion for Change of Venue from the County with the request that file-marked copies be returned in the enclosed stamped, self-addressed envelope. The name of the case and the cause number were clearly indicated. Plaintiff's Indianapolis counsel acknowledged receipt of these papers on Saturday morning, March 8. On Monday morning, March 10, the letter with enclosures was received by the Hancock County Clerk. This fact is supported by the Superintendent of Mails in Greenfield, Indiana,

who stated in an affidavit that, according to delivery schedules, these papers should have arrived in the Clerk's office before 10:00 A.M.

Upon receipt of the papers, the affidavit of the Clerk states that she did not file-mark them. Instead, they were placed in an envelope and set aside for mailing to Special Judge Smith at his office in Anderson, Indiana, pursuant to the local court rule requiring the Clerk to send such pleadings directly to the Special Judge in the case rather than mark them filed.

Meanwhile, unknown to the Clerk, and while the pleadings were still in the Clerk's office, Judge Smith came from Anderson to the Clerk's office, where he entered a default judgment against the defendants. Judge Smith apparently did not realize that these papers were delivered to the Clerk earlier that day. There is no evidence that Judge Smith consulted with the Clerk or examined the Clerk's records to determine if any pleadings had been received or "filed".

The unrebutted sworn statement of defendants' attorneys in their Motion to Vacate the Default Judgment is that while the pleadings remained in the Clerk's office, Judge Smith came to the Hancock Circuit Court and entered the default judgment. He finally received these papers on Tuesday, March 11, at his office in Anderson.

On August 25, 1969, the Honorable Carl T. Smith, Special Judge, made the following finding:

> "The Court finds the defendants forwarded to the Clerk of this Court and the Clerk of said county received for filing March 10, 1969, the following: Answer of defendants in Two Paragraphs, Motion for Change of Venue from County, Henry, Rush, Shelby, Marion, Hamilton and Madison Counties are now named to a panel from which to strike. The parties are ordered to proceed with the striking according to law."

*GROUND 1.* The local rule of the Hancock Circuit Court prohibiting the Clerk from filing pleadings received for that

purpose and directing the Clerk to mail same to the Special Judge for filing and custody, is invalid because it is contrary to Indiana law.

The word "filed" has been defined to mean delivery to the proper official. "A paper is filed with the clerk *when it is delivered to him for that purpose.*" (Emphasis supplied.) *Morthland* v. *Lincoln National Life Insurance Co.*, (1942) 220 Ind. 692, 42 N. E. 2d 41; *Walner* v. *Caprone* (1945), 224 Ind. 267, 66 N. E. 2d 64; *Cleveland, Cincinnati, Chicago & St. Louis Railway Co.* v. *Morrey,* (1909) 172 Ind. 513, 88 N. E. 932; *Grabowski* v. *Benza,* (1923) 80 Ind. App. 214, 140 N. E. 76. "Filed" has been liberally construed to include delivery to a night watchman at the State Capitol Building. *State* v. *Ensley,* (1959) 240 Ind. 472, 164 N. E. 2d 342; *Elliott* v. *Gardner,* (1942) 113 Ind. App. 47, 46 N. E. 2d 702.

The clerk of a circuit court has a statutory duty to endorse and file all papers received by him. Ind. Ann. Stat. § 49-2706 (Burns' 1964) ; see 5 I.L.E. *Clerk of Courts* § 2. The act of filing official documents is ministerial and not a judicial function. It is clearly the intent of § 49-706, *supra,* and the cases that have considered the definition of filing that when a document or pleading is delivered to the proper authority for filing, a Court cannot circumvent a legislative enactment and existing case law by local court rule. Attorneys and the public have the right to rely on established law in conducting litigation in the courts.

Circuit Courts are authorized to adopt their own local rules, *so long as those rules are not repugnant to the laws of the State of Indiana.* (Emphasis supplied.) Ind. Ann. Stat. § 4-313 (Burns' 1968) ; *Rooker* v. *Bruce,* (1908) 171 Ind. 86, 85 N. E. 351; *Barber* v. *State,* (1925) 197 Ind. 88, 149 N. E. 896; *Krutz* v. *Griffith,* (1879) 68 Ind. 444. The local rule of the Hancock Circuit Court attempts to change existing law as to what constitutes filing and, therefore, is invalid. *Rooker* v. *Bruce, supra.* Filed is filed.

The Change of Venue From The County and the other pleadings were then properly filed when received by the Clerk on Monday morning, March 10. These pleadings had been delivered to the Clerk for the purpose of filing. Any action taken thereafter must of necessity consider such fact. Recognizing that this local rule was probably adopted to bring pleadings to the prompt attention of a Special Judge, there is, nevertheless, a pungent odor of illegality emanating from a local court rule which usurps the Clerk's function. It should be struck down and buried deep in judicial soil.

*GROUND 2.* The default judgment entered by the Special Judge on March 10, 1969, was *void* and not voidable because a Motion for Change of Venue From The County was on file at the time the default was entered and the Special Judge had no jurisdiction to enter such a judgment.

Courts act ministerially when granting a change of venue. *State ex rel. Lindsey* v. *Beavers,* (1947) 225 Ind. 398, 75 N. E. 2d 660. Thus, when a motion for a change of venue is filed, the trial judge loses authority and is without jurisdiction to consider any matter involved in the case, emergencies excepted. *State ex rel. Krupa* v. *Peak* (1947), 225 Ind. 164, 73 N. E. 2d 482; *State ex rel. Ballard* v. *Jefferson Cir. Ct.,* (1947) 225 Ind. 174, 73 N. E. 2d 489; *State ex rel. Cornett* v. *Dearborn Cir. Ct.,* (1957) 236 Ind. 294, 140 N. E. 2d 101. This Court recently held in *Michigan Mutual Liability Co.* v. *Perez* (1965), 137 Ind. App. 247, 256, 207 N. E. 2d 368, that: "When the application for a change of venue was filed . . . , the trial judge before whom the cause was filed lost jurisdiction except in matters of emergency and which matters need prompt determination."

Where a defendant's answer is on file, a judgment cannot be entered against him by default. *Firestone* v. *Firestone,* (1881) 78 Ind. 534. Even where the defendant has failed to answer within the time specified, if the answer is filed before the entry of the default judgment, the default is void. *Reeder*

v. *Marshall*, (1958) 214 Ore. 154, 328 P. 2d 773; *cf.* 47 Am. Jur. 2d *Judgments* § 1169, p. 175. Since authority to render a judgment is absolutely essential to a valid judgment, in the absence of such authority the judgment is *void*, and not voidable. *Michigan Mutual Liability Co.* v. *Perez, supra; State ex rel. Public Service Comm'n* v. *Johnson Cir. Ct.*, (1953) 232 Ind. 501, 112 N. E. 2d 429; *Calumet Teaming & Trucking Co.* v. *Young*, (1940) 218 Ind. 468, 33 N. E. 2d 109; 1 Freeman, *Judgments* (5th ed.) § 226, pp 444-45.

In the instant case, the papers were "filed" before Judge Smith arrived at the Clerk's office to enter the default. Therefore, a motion for a Change of Venue from the County was properly before him. Consequently, he was without jurisdiction to act in the case, thereby rendering the default judgment *void.* There is a strong implication in Judge Smith's entry of August 25, 1969, that he considered the default judgment void because he granted the defendant's Motion for Change of Venue from the County. Once being made aware of what had transpired, he must have considered the default void because there would be no reason to grant a change of venue if the default judgment was valid. How else can further proceedings in this case be explained?

Entering a default judgment is drastic judicial action—not to be done lightly. A Court speaks only through its record and it is the duty of the Judge to expedite the business of the Court. *State ex rel. Thompson* v. *March*, (1945) 224 Ind. 14, 64 N. E. 2d 293.

While it is true the defendants had received notice to plead by a certain date or be defaulted thereafter, they were also represented by counsel of record in a case where the Special Judge resided in a different county from the one in which the case was pending. Under these circumstances, a default judgment should be entered with caution. Otherwise, the entry of a default may be a farce. The incongruous situation may exist, as it did in this case, where pursuant to local rule the Clerk "receives" pleadings but does not file them, one of

the plaintiff's attorneys receives copies of the pleadings before the Special Judge receives them, the Special Judge travels from another county, enters the courtroom and defaults the defendants while the Motion For Change of Venue From The County is pending which deprives him of jurisdiction.

This is not justice by any definition. For the reasons and on the authorities stated above, the judgment should be reversed and this cause tried on the merits.

NOTE.—Reported in 276 N. E. 2d 160.